Argued and submitted September 8, 1997; reassigned April 3, decision of Court of Appeals reversed; order of Board of Parole reversed; case remanded to State Board of Parole and Post-Prison Supervision for further proceedings September 11, 1998

# ANTHONY JOHN NOBLE,
*Petitioner on Review,*

*v.*

# BOARD OF PAROLE
# AND POST-PRISON SUPERVISION,
*Respondent on Review.*

## (CA A89837; SC S43922)

964 P2d 990

486

Eric M. Cumfer, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the petition and the brief was Sally L. Avera, Public Defender.

Christine Chute, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Gail L. Meyer, Portland, filed the brief for *amicus curiae* American Civil Liberties Union.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, and Durham, Justices.**

GILLETTE, J.

** Fadeley, J., retired January 31, 1998, and did not participate in this decision; Graber, J., resigned March 31, 1998, and did not participate in this decision; Kulongoski and Leeson, JJ., did not participate in the consideration or decision of this case.

## GILLETTE, J.

Petitioner seeks review of an order of the Board of Parole and Post-Prison Supervision (Board) that designated him as a "predatory sex offender" pursuant to ORS 181.585 *et seq.*[1] He challenges the predatory sex offender statutes on various substantive constitutional grounds. He also contends that the Board's designation decision was defective procedurally—in particular, he asserts that the Board violated the Oregon Administrative Procedures Act (APA) and the Due Process Clause of the United States Constitution by designating him as a predatory sex offender without providing him with prior notice and a hearing. For reasons that will become apparent, we reach only those latter, procedural issues. We conclude that petitioner was not afforded the process to which he was entitled under the Due Process Clause and, consequently, that his designation as a predatory sex offender is invalid.

In 1993, the Oregon Legislature enacted Oregon Laws 1993, chapter 807, a law requiring state and local corrections agencies to provide appropriate notice to the community when certain convicted sex offenders—designated as "predatory sex offenders" are released into the community on probation, parole, or post-prison supervision. Under the statute, the Board must designate a person as a predatory sex offender if he or she is convicted of one or more of a specified group of sex crimes and "exhibits characteristics showing a tendency to victimize or injure others." ORS 181.585(1). The statute does not identify or explain those "characteristics" further.

ORS 181.586(1) provides:

"If the State Board of Parole and Post-Prison Supervision for a person on parole or post-prison supervision or the Department of Corrections or a community corrections agency for a person on probation makes a determination that the person under its supervision is a predatory sex offender, the agency supervising the person shall notify

---

[1] At the time that petitioner commenced this proceeding, the statute appeared at ORS 181.507 *et seq.* It subsequently has been renumbered.

anyone whom the agency determines is appropriate that the person is a predatory sex offender."

In providing notification, the supervising agency has broad discretion with respect to whether and to whom to provide notification,[2] the content of any such notification,[3] and the method of communication of the notification.

In 1990, petitioner was convicted of first-degree rape, first-degree sodomy, and second-degree kidnapping, and was sentenced to a period of imprisonment. In 1995, after serving his sentence, petitioner was released on post-prison supervision. Before his release, the Board issued an "Order of Supervision Conditions" that designated petitioner as a predatory sex offender pursuant to ORS 181.585.

Petitioner sought administrative review of the order by submitting a written request to the chairperson of the Board within 45 days of the mailing date of the order. OAR 255-80-005-015. In that request, petitioner suggested that the predatory sex offender designation was erroneous and requested its deletion. In a second review request, petitioner also argued that: (1) the designation was not supported by substantial evidence, because the Board took no evidence and held no hearing on the matter; (2) failure to provide notice and a hearing violated petitioner's federal due process rights and provisions of the Oregon APA; (3) retroactive application of the sexual predator statute violates the *ex post facto* principles expressed in Article I, section 21, of the Oregon Constitution, and Article I, section 10, of the United States Constitution; (4) the sexual predator statute is a bill of attainder prohibited by Article I, section 10, of the United States Constitution; (5) the Board's application of the sexual predator statute constitutes double jeopardy, in violation of the Fifth

---

[2] The supervising agency at least must consider notifying the person's family, sponsor, residential neighbors, churches, parks, schools, stores, convenience businesses, other places that children or other potential victims may frequent, and prior victims of the offender. ORS 181.586(2).

[3] Notification may include, but is not limited to, the person's name and address, a physical description, a description of the person's vehicle, a description of the person's *modus operandi* and primary and secondary targets, a current photograph, and information about the conditions of the person's probation or release and the name and telephone number of the person's parole or probation officer. ORS 181.586(3).

Amendment to the United States Constitution, and Article I, section 12, of the Oregon Constitution; and, finally, (6) the statute imposes cruel and unusual punishment and is not based on principles of reformative justice, and, thus, violates the Eighth Amendment to the United States Constitution, and Article I, sections 15 and 16, of the Oregon Constitution.

The Board denied the requested relief. It stated that it had reviewed petitioner's "entire file" in making its designation decision—including police reports of petitioner's crime, the risk assessment form that the Department of Corrections (Department) had submitted pursuant to OAR 291-28-030(2), and "confidential communications between agency officials"— and that the designation was supported by substantial evidence. The Board also rejected petitioner's contention that due process required prior notice and a hearing. In that regard, the Board noted that, under ORS 181.585(2), it could base a predatory sex offender designation on a Department-approved risk assessment evaluation. Finally, the Board rejected all petitioner's various constitutional arguments on the ground that designation as a predatory sex offender is not a "punishment."

Petitioner sought judicial review by the Court of Appeals pursuant to ORS 144.335. In a per curiam opinion, the Court of Appeals affirmed. The court stated:

> "Petitioner's arguments are resolved contrary to his position by our decisions in *Schuch v. Board of Parole*, 139 Or App 327, 912 P2d 403, *rev den* 324 Or 78 (1996), [and] *Gress v. Board of Parole*, 143 Or App 7, 924 P2d 329, *on recons* 144 Or App 375, [927] P2d [138] (1996) [further citation omitted]."

*Noble v. Board of Parole*, 145 Or App 256, 927 P2d 1120 (1996).

We interpret the references to *Schuch* and *Gress* in the foregoing quotation to convey three conclusions that: (1) petitioner's arguments that pertain to community notification were not yet ripe; (2) petitioner has failed to show that a liberty interest was at stake that would trigger procedural protections under the Due Process Clause or the Oregon APA; and (3) petitioner's remaining arguments all depend on

the erroneous proposition that designation as a predatory sex offender under the statute is a "punishment."[4]

Petitioner now seeks review of the Court of Appeals' decision. He contends, first, that all his arguments, including those that focus on community notification, were (and are) ripe. He then argues that he had a right to notice and a hearing—that his designation as a predatory sex offender affected an interest that is protected by the federal Due Process Clause and also, albeit indirectly, by the Oregon APA. Finally, petitioner argues that, contrary to the Court of Appeals' apparent view, his *ex post facto*, bill of attainder, double jeopardy, and cruel and unusual punishment arguments are meritorious, because designating him as a predatory sex offender and notifying the community of that designation *is* a punishment.

■ We begin with the issue of ripeness. When this case first was argued, the Board suggested that, because petitioner's arguments were directed primarily at community notification and the record on review did not show what actions (if any) had been taken in that regard, his claims were "premature." To the extent that the Board's concern was that petitioner's claims were too speculative in the absence of evidence of an actual community notification decision, that argument has been resolved. The parties have stipulated that, in July and August of 1995, when petitioner was seeking administrative review of the Board's designation, petitioner's supervising agency was: (1) publishing a story in an Albany newspaper reporting the fact of petitioner's release, his address, his place of employment, the nature of

---

[1] In *Schuch*, the Court of Appeals concluded that the Board did not violate the Oregon APA or the Due Process Clause of the Fourteenth Amendment by designating the petitioner a predatory sex offender pursuant to ORS 181.585 without first providing notice and an opportunity to be heard. 139 Or App at 331-32. The court concluded that freedom from punishment was the only "liberty interest" at stake and that designating the petitioner as a sexual predator did not constitute "punishment." The court also concluded that, because designation does not impose a punishment, the petitioner's other constitutional arguments (which, presumably, mirrored those at issue here) lacked merit. *Ibid*. In *Gress*, the court concluded that the petitioner's *ex post facto* challenge to the community *notification* aspects of ORS 181.585 was not ripe for review and that his *ex post facto* challenge to the *designation* aspects of the statute must fail, because designation is not punitive— that is, designation has a nonpunitive purpose and "is not in its nature or effect so punitive as to negate [that nonpunitive purpose]." 143 Or App at 16.

his crimes, and the conditions of his post-prison supervision; (2) distributing a flyer containing similar information to unknown parties; (3) notifying petitioner's girlfriend and employer of those facts; and (4) posting a red, 9" x 14" sign that read "Sex Offender Residence" on petitioner's home.[5] The issues that petitioner raises are ripe and justiciable.

To the extent that the Board's point is that issues relating to the community notification decision *never* will be justiciable in the context of a proceeding seeking judicial review of an action by the Board, our analysis is somewhat more involved. As the Board points out, ORS 181.585 clearly contemplates a bifurcated decisionmaking process. One agency—in this case, the Board—makes the initial decision that the released offender is a predatory sex offender. After that decision is made, a second agency—usually a community corrections agency—determines whether to notify the community and what notification to provide. The Board suggests that, in view of that bifurcated decisionmaking structure, petitioner cannot raise issues that pertain to notification in a challenge to the designation decision. For the reasons that follow, we disagree.

For purposes of petitioner's claims, we do not separate the Board's designation decision and the ensuing notification decision. Although there is a two-step process in place, both steps are directed at a single goal—community notification. Designation sets the notification process in motion. Once a designation is made, the agency that supervises the designee *shall* notify anyone whom the agency determines is appropriate that the person is a predatory sex offender. ORS 181.586(1). Indeed, the sole purpose and effect of a designation decision is to set the stage for notification. Although the Board itself may not make the decision to notify the community, its designation is directed only at that outcome. Under those circumstances, petitioner can raise this challenge, which looks beyond the narrow and immediate effects of designation to its ultimate purpose and effect, in the context of judicial review of the Board's decision.

---

[5] The sign was posted on petitioner's home in July 1995, shortly after his release from prison. The sign was removed in April 1996.

Having concluded that petitioner's claims are ripe and justiciable, we turn to the claims themselves. As noted, petitioner's claims fall into two categories: (1) constitutional challenges to the substance of the statutory scheme as a whole; and (2) challenges, both statutory and constitutional, to the procedures utilized by the Board in reaching its decision. We begin and end our analysis with petitioner's procedural claims, which we find dispositive.[6]

Petitioner's first procedural claim is that, in failing to provide prior notice and a hearing before deciding to designate him as a predatory sex offender, the Board violated the "contested case" requirements of the Oregon APA. In so arguing, petitioner relies, not on the statutory notice and hearing requirements for contested cases themselves, but on the statutory definition of a "contested case" in ORS 183.310(2)(a). He points to the following part of that definition:

" 'Contested case' means a proceeding before an agency:

"(A)  In which the individual legal rights, duties or privileges of specific parties are required by statute or Constitution to be determined only after an agency hearing at which such specific parties are entitled to appear and be heard."

Petitioner contends that the predatory sex offender determination comes within that definition—that the Due Process Clause of the United States Constitution entitles him to appear and be heard at a prior hearing. That is so, petitioner argues, because community notification involves an invasion of "liberty interests"—reputation, privacy, and freedom from additional legal obligations—of a magnitude that an agency cannot make the decision to notify without providing a full evidentiary hearing. And, because the United States Constitution requires a prior hearing, petitioner argues, ORS 183.310(2)(a) also requires a contested case hearing.

---

[6] We do not go on to address petitioner's challenges to the substance of the pertinent statutes because, although petitioner *could* once again be subjected to the notification process, it is not at all clear that such an event is likely. We therefore elect to limit this opinion to the procedural issues.

The Board denies that it has a duty under ORS 183.310(2)(a) to provide notice and a hearing. We agree with the Board. Although a different APA provision—ORS 183.415—requires agencies to provide hearings in contested cases, the Board expressly is exempted from that requirement by ORS 183.315(1). If petitioner is entitled to prior notice and a hearing under the present circumstances, the source of that entitlement clearly is not the Oregon APA.

Petitioner contends in the alternative that he was entitled to notice and a hearing under the Due Process Clause of the Fourteenth Amendment to the United States Constitution prior to any designation decision.[7] To succeed on such a claim, petitioner first must show that, in designating him as a predatory sex offender, the Board deprived him of an interest in "liberty" or "property" within the meaning of the Fourteenth Amendment. He contends that the designation implicated at least three "liberty" interests: (1) an interest in reputation; (2) an interest in privacy; and (3) an interest in remaining free of legal obligations that otherwise would not apply.

We begin with the asserted interest in reputation. In suggesting that reputational interests are protected by the Due Process Clause, petitioner relies on *Wisconsin v. Constantineau*, 400 US 433, 91 S Ct 507, 27 L Ed 2d 515 (1971), and related United States Supreme Court cases. In *Constantineau*, the Wisconsin legislature enacted a statute permitting local officials to forbid any sale or gift of alcohol to persons whose drinking had caused certain problems for their families or communities. Pursuant to that statute, the Chief of Police of Hartford, Wisconsin, without notice or a hearing to Constantineau, posted a notice in Hartford area retail liquor outlets to the effect that sales or gifts of alcohol to Constantineau were forbidden. The Supreme Court concluded that that action violated the Due Process Clause:

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is

---

[7] The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The Board does not deny that, if petitioner has the right that he claims, this court may announce that fact in this proceeding.

doing to him, notice and an opportunity to be heard are essential. * * * Under the Wisconsin Act, a resident of Hartford is given no process at all. [Constantineau] was not afforded a chance to defend herself. She may have been the victim of an official's caprice. Only when the whole proceedings leading to the pinning of the unsavory label on a person are aired can oppressive results be prevented."

*Id.* at 437, 27 L Ed 2d at 519.

The Board responds that petitioner's reputation argument fails, because that argument does not reflect the present state of due process law. *Constantineau,* the Board points out, is not the last word on the topic. Later cases—notably *Paul v. Davis,* 424 US 693, 96 S Ct 1155, 47 L Ed 2d 405 (1976), and *Seigert v. Gilley,* 500 US 226, 288, 111 S Ct 1789, 114 L Ed 2d 277 (1991), have made it clear that, by themselves, reputational interests alone are not "liberty" interests within the meaning of the Due Process Clause and do not merit due process protections.

Petitioner acknowledges the validity of the foregoing proposition, but argues that it does not describe the present case. Petitioner argues, in particular, that far more is at stake than the limited reputational interests at issue in *Seigert* and *Paul* when a designation decision is made under ORS 181.585.

We agree that the present case differs from *Seigert* and *Paul* in a way that is significant to the inquiry at hand. Because a general understanding of those cases is necessary to our explanation, we briefly explain their facts and holdings.

In *Paul,* the plaintiff filed an action in federal court under 42 USC § 1983, arguing that the local police had violated his due process rights by distributing a circular to retail businesses that identified him, by name and photograph, as an "active shoplifter." After noting that the plaintiff had stated a "classical claim for defamation," the Court concluded that the claim had no due process significance. It reasoned that (1) as a general proposition, the Due Process Clause does not imbue a commonplace state tort claim for defamation with constitutional significance, merely because the damage to reputation is inflicted by a government official; and (2) a

claimed injury to reputation is not different in kind from injuries to other interests that are protected by state law and one's interest in reputation alone, apart from some more tangible interest such as employment, cannot justify the invocation of the procedural safeguards guaranteed by the Due Process Clause. 424 US at 697-701, 47 L Ed 2d at 411-14. The Court also explained that its earlier decision in *Constantineau* was not to the contrary, because something more than mere reputational damage was at issue in that case, *viz.*, the right, under state law, to purchase alcohol. *Id.* at 707-09, 47 L Ed 2d at 417-18.

In *Seigert*, a psychologist who had been employed in an Army hospital filed a federal claim against a former supervisor, asserting that the supervisor had infringed on liberty interests protected by the Due Process Clause by providing a negative assessment of the psychologist's job performance to the psychologist's new employer. The Supreme Court noted that, while perhaps sufficient to make out a state defamation claim, the facts did not support a federal claim, because there is no constitutional protection for the interest at stake, *viz.*, an interest in reputation. 500 US at 234, 114 L Ed 2d at 288.

Notably, both *Paul* and *Seigert* involved claims that, in essence, were defamation claims—claims that a government employee had reported or published something about the plaintiff that was unflattering and false. Although the plaintiffs in those cases made nominal appeals to the Due Process Clause, process was never really an issue. That is so, perhaps, because the offensive acts of labeling in *Paul* and *Seigert* were confined to an invasion of an interest in reputation alone, apart from any other, more tangible interest, such as the opportunity to pursue or retain employment.

The same cannot be said of the Board's decision to designate an individual as a predatory sex offender. When a government agency focuses its machinery on the task of determining whether a person should be labeled publicly as having a certain undesirable characteristic or belonging to a certain undesirable group, and that agency must by law gather and synthesize evidence outside the public record in making that determination, the interest of the person to be

labeled goes beyond mere reputation. The interest cannot be captured in a single word or phrase. It is an interest in knowing when the government is moving against you and why it has singled you out for special attention. It is an interest in avoiding the secret machinations of a Star Chamber. Finally, and perhaps most importantly, it is an interest in avoiding the social ostracism, loss of employment opportunities, and significant likelihood of verbal and, perhaps, even physical harassment likely to follow from designation. In our view, that interest, when combined with the obvious reputational interest that is at stake, qualifies as a "liberty" interest within the meaning of the Due Process Clause.

We conclude that the Board's decision to designate a person as a predatory sex offender under ORS 181.585 implicates a due process interest in liberty. We have yet to determine whether the level of process afforded to petitioner by the Board was sufficient to satisfy the Due Process Clause. Petitioner contends that it was not, and that he was entitled to a full evidentiary hearing with appointed counsel before the designation decision.

■ ■   When an individual's interests in life, liberty, or property are at stake, due process requires, at a minimum, that the person receive notice and an opportunity to be heard. *Goss v. Lopez*, 419 US 565, 579, 95 S Ct 729, 42 L Ed 2d 725, 737 (1975). However, within that broad requirement, due process is flexible, calling for "such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 US 471, 481, 92 S Ct 2593, 33 L Ed 2d 484, 494 (1972). In any given situation, a court determines the specific requirements of due process by considering three factors: (1) the private interest that will be affected by the governmental action; (2) the risk of an erroneous decision inherent in the procedure employed, along with the probable value of any additional or different procedural safeguard; and (3) the government's interest, including any fiscal and administrative burdens involved in providing additional or substituted procedures. *Mathews v. Eldridge*, 424 US 319, 334-35, 96 S Ct 893, 902-03, 47 L Ed 2d 18, 33 (1976).

Beginning with the first factor, the private interests affected by ORS 181.585 are significant. As noted, there is no

question that a person who is identified as a predatory sex offender under the statute is put at risk of serious consequences: social ostracism, loss of job prospects, and significantly increased likelihood of verbal and even physical harassment. Those consequences flow predictably from the government's decision and must be taken into account in the analysis.

Next, we consider the risk of error involved in the present procedure. The Board is charged with determining whether certain individuals "exhibit[ ] characteristics showing a tendency to victimize or injure others"—a factual determination. In making that determination, the Board is directed to employ a Department-approved risk assessment scale. Although the scale partly is based on a straightforward and objective analysis of the offender's criminal history (for example, whether the offender had multiple victims or used a weapon), other aspects of the scale are subjective (for example, whether the offender exhibits predatory behavior). In the present case, the Board considered, in addition to the risk assessment scale, police reports of petitioner's crime and "confidential communications between agency officials." The content of the "confidential communications" is unknown to petitioner.

The risk of an erroneous decision under those circumstances is significant. If there is error in the materials that the agency considers, petitioner never will have the chance to know of the error, much less to correct it. This is not a case in which, for example, an evidentiary hearing is unnecessary, because the predicates for the deprivation are "objective facts * * * within the personal knowledge of an impartial government official." *Mackey v. Montrym*, 443 US 1, 13, 99 S Ct 2612, 61 L Ed 2d 321, 331 (1979) (no evidentiary hearing required for license suspension based on driver's refusal to take breath test). *Some* of the evidence employed by the Board in making its decision might fit that description, but other evidence is necessarily subjective and, worse, unknown. Moreover, with respect to that unknown or "confidential" information, there is not even the comfort of knowing that the source of the information is reliable and impartial. Further, the ultimate question, whether petitioner

"exhibits characteristics showing a tendency to injure others," inherently is subjective. The risk of error involved in the Board's abbreviated process substantially is greater than the risk involved in a typical administrative decision.

Finally, we consider the Board's interests, including its interest in avoiding the burdens involved in providing an additional predesignation procedure. The state clearly has an interest in identifying predatory sex offenders *before* they are released into the community. The risks involved in failing to make a *timely* designation—including potential liability for the offender's future crimes—are obvious and serious. Because it expedites the process of designation, the present procedure serves the state's interest in making timely designations. But the state does not identify any other interest, such as avoidance of delay or expense, that justifies or requires postponement of the hearing until after designation occurs. We conclude that requiring the state to afford a pre-deprivation hearing in this circumstance would not impose a significant procedural burden on the state.

The outcome of the foregoing calculus is not difficult. Weighing the foregoing factors, we conclude that due process requires notice and an evidentiary hearing when the Board proposes to designate a person as a predatory sex offender pursuant to ORS 181.585. Moreover, the hearing must occur *before* the designation decision is made. That is so, because due process requires that the hearing be provided before the deprivation actually takes place. *Fuentes v. Shevin*, 407 US 67, 81, 92 S Ct 1983, 32 L Ed 2d 556, 570-71 (1972).[8] Here, as the statute is written and as it has been applied by the Board and supervising agencies, the deprivation at issue, *i.e.*, community notification, can follow so close on the heels of a designation decision that a post-decisional hearing would occur too late to comport with due process.

---

[8] When a state feasibly can provide a predeprivation hearing before taking property, it generally must do so. *Connecticut v. Doehr*, 501 US 1, 18, 111 S Ct 2105, 115 L Ed 2d 1, 18 (1991) (without some showing of exigent circumstances, state's failure to provide for preattachment hearing violated Due Process Clause); *Cleveland Board of Education v. Loudermill*, 470 US 532, 542, 105 S Ct 1487, 1493, 84 L Ed 2d 494, 503 (1985) (some kind of hearing required *before* employee was discharged).

We conclude that petitioner was entitled to notice and a hearing before the Board designated him as a predatory sex offender. The Board failed to provide those procedural protections. As a consequence, its decision is invalid. Because the decision to designate petitioner as a predatory sex offender was invalid procedurally, the Board must remove the designation itself, and any adverse consequences that flowed from it, to the extent that that is possible. We remand the case to the Board for that purpose. In remanding the case to the Board, we express no opinion regarding the Board's authority to reinstate the designation if and when it is able to provide the procedural safeguards that the Due Process Clause demands.

The decision of the Court of Appeals is reversed. The order of the State Board of Parole and Post-Prison Supervision is reversed. The case is remanded to the State Board of Parole and Post-Prison Supervision for further proceedings.