Argued and submitted September 14, 2004, decision of Court of Appeals reversed; order of Board of Parole and Post-Prison Supervision reversed, and case remanded to the board for further proceedings February 10, 2005

V. L. Y.,
*Petitioner on Review,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent on Review.*

(CA A108068; SC S51000)

106 P3d 145

Kendra M. Matthews, of Ransom Blackman LLP, Portland, argued the cause and filed the brief for petitioner on review.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

GILLETTE, J.

---

** Kistler, J., did not participate in the consideration or decision of this case.

### GILLETTE, J.

This is a case of judicial review of an order of the Board of Parole and Post-Prison Supervision (the board) that designated petitioner as a "predatory sex offender" for purposes of Oregon's sex offender community notification law, set out at ORS 181.585 to 181.590. Petitioner challenges the designation on statutory and constitutional grounds. We agree with petitioner that the designation arose out of a statutorily impermissible decisional process and, accordingly, reverse the board's order.

In 1993, the legislature enacted a law requiring agencies who supervise sex offenders to notify "appropriate" persons when a parolee or probationer who has been designated as a predatory sex offender is released into the community. Or Laws 1993, ch 807, §§ 1-5. The law, which has been amended on several occasions since 1993, now appears at ORS 181.585 to 181.590. The law authorizes the board to determine which of the persons whom it releases on parole or post-prison supervision should be designated as predatory sex offenders. ORS 181.586(1)(a). It then requires the agencies that supervise persons so designated to notify "anyone whom the agency determines is appropriate" about the designation. *Id.*

When the board first took on the task of identifying predatory sex offenders, it adopted a decisional process that relied, in part, on a "sex offender risk assessment scale" and that did not allow for input from the potential designees. However, in *Noble v. Board of Parole*, 327 Or 485, 964 P2d 990 (1998), this court held that the board violated a parolee's due process rights by designating him as a predatory sex offender under that procedure. We further held that due process required the board to give a potential designee notice and an evidentiary hearing before the designation takes place. *Id.* at 498.

Shortly thereafter, and apparently in response to this court's decision in *Noble*, the board adopted a new designation scheme. The new procedure, set out at OAR 255-060-0011 (2000),[1] began with the same sex offender risk

---

[1] In 2004, the board adopted yet another procedure for identifying predatory sex offenders. OAR 255-060-0011 (2004). The new rule refers to a different sex

assessment scale that the board had been using. The scale consisted of a one-page checklist of items, some of which focused on past criminal conduct (*e.g.*, "multiple victims on current sex offense conviction") and some of which described present characteristics and behaviors (*e.g.*, "takes full responsibility for offending behavior" and "not in treatment"). The scale assigned each item either a negative or a positive numeric value, depending on whether the item was thought to increase or decrease the probability that a convicted sex offender will reoffend. The scale designated a small number of the negative items as "starred" factors and three other negative items as "override" factors. All the starred and override factors pertained to the offender's criminal history.[2]

Applying the risk assessment scale to an individual was a simple process of having a designated government employee check the items on the scale that pertained to that individual. The results then were forwarded to the board, which used them to make its predatory sex offender determination. Under the rule, the board *was required* to make a finding that the individual was a predatory sex offender if the individual scored on three or more starred factors or on any of the override factors. The board *could* make a predatory sex offender finding if the individual scored at least negative 50 in total on the scale but had no override factors and fewer than three starred factors. OAR 255-060-0011(3) (2000).

Under the board's rule, the amount of process that a potential predatory sex offender designee received depended on the category in which the risk assessment score placed the potential designee. The rule entitled individuals in the last-described category to a full evidentiary hearing prior to any predatory sex offender finding. OAR 255-060-0011(6)(a). On

_____

offender risk assessment scale, the STATIC - 99, and requires the board to make a predatory sex offender finding for inmates and offenders who score four or more points on the scale. The change in the rule has no effect on our analysis here.

[2] Starred factors included: offender has history of sexual crimes other than present offense; offender has history of sex offense convictions other than present offense; offender was stranger to the victim of his current offense; offender's current offense had multiple victims; offender used weapons or threats in current offense; and offender had prior nonsexual criminal history. Override items were: conviction for forcible rape; offender uses weapon to harm victim in current conviction; and male offender has criminal history of molesting boys.

the other hand, individuals who scored on at least one override factor or at least three starred factors were not entitled to a hearing. They were, however, entitled to receive notice of their risk assessment score and an opportunity to submit written objections. If, after considering the individual's objections, the board found that there was evidence to support at least three starred factors or one override factor, it had to designate the individual as a predatory sex offender. OAR 255-060-0011(6)(b) (2000).

In the present case, the board initially designated petitioner as a predatory sex offender under the board's old designation procedures. However, after the *Noble* decision issued, the board chose to reevaluate petitioner using the procedure described above.

Upon applying that procedure, the board initially concluded that it should designate petitioner as a predatory sex offender because he had scored on an "override" factor—conviction for forcible rape. The board retreated from that rationale when petitioner demonstrated, in his written objections, that the conviction was for statutory (not forcible) rape. However, petitioner also had scored on three "starred" items—for having a history of sex offense convictions other than the current conviction, for using weapons or threats in the crime that led to his current conviction, and for having a prior nonsexual criminal history. Although petitioner objected in writing to the findings with respect to those items, the board rejected those objections, along with other general objections to the designation scheme. The board then issued an order designating petitioner as a predatory sex offender.

Petitioner sought judicial review, arguing, *inter alia*, that the board had erred in refusing to consider evidence that petitioner wished to offer showing that he now presents a low risk of reoffending.[3] The board argued, in response, that it

[3] Petitioner also argued that (1) due process entitled him to an evidentiary hearing before the board issued a determination designating him as a predatory sex offender; (2) the board must prove a determination that a person is a predatory sex offender for purposes of ORS 181.585 by clear and convincing evidence; (3) in making such a determination, the board must employ a scale that is scientifically valid; (4) regardless of the standard of proof, the evidence did not support a determination that petitioner is a predator sex offender; (5) applying the predatory sex

lawfully could, and did, base its designation decision entirely on objective facts drawn from petitioner's criminal history.

A majority of the Court of Appeals, sitting en banc, agreed with the board's theory and affirmed.[4] *V. L. Y. v. Board of Parole*, 188 Or App 617, 72 P3d 993 (2003). Although the majority acknowledged that, under the relevant statute, a predatory sex offender *presently* must "exhibit[ ] characteristics showing a tendency to victimize or injure others," ORS 181.585(1)(a), it concluded that reliance on an individual's past crimes is permissible, because such crimes are relevant to the issue of whether a tendency to victimize others presently exists. *Id.* at 625. The majority also opined that, because the statute delegates to the Department of Corrections (the department) the task of devising a scale that identifies the relevant characteristics, it leaves that body free to devise a scale that relies entirely on criminal history. *Id.*

Two dissenting opinions took the opposite view— that the inquiry into whether a person is a predatory sex offender for purposes of the community notification statute necessarily is concerned with an offender's present condition and is subjective, and that the board therefore had no authority to limit itself to an examination of the "objective" facts of an offender's criminal history. *Id.* at 639-46 (Edmonds, J., dissenting), 646-49 (Armstrong, J., dissenting).

Although there are other issues in this case, the foregoing one—whether the board may look exclusively at past convictions reported in petitioner's sex offender risk assessment scale to determine whether an individual is a predatory sex offender, even when a potential designee wishes to offer evidence of his or her own on the subject—is fundamental, and we consider it first. That issue, as all the members of the Court of Appeals, both majority and dissent, recognized, is first of all a matter of statutory construction, to be resolved

---

offender statute retrospectively violated the *ex post facto* prohibitions in the state and federal constitutions; and (6) the statutory predatory sex offender scheme violates federal and state constitutional prohibitions on bills of attainder, double jeopardy, and cruel and unusual punishment and federal guarantees respecting the right to privacy.

[4] The majority briefly considered and then rejected each of petitioner's other claims of error.

using the analytical paradigm set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). Under that paradigm, we first consider the relevant statutory text and context.

ORS 181.585 provides:

"(1)  For purposes of ORS 181.585 to 181.587, a person *is* a predatory sex offender if the person *exhibits* characteristics showing a tendency to victimize or injure others *and has been convicted* of a sex crime listed in ORS 181.594(2)(a) to (d), has been convicted of attempting to commit one of those crimes or has been found guilty except for insanity of one of those crimes.

"(2)  In determining whether a person *is* a predatory sex offender, an agency *shall use* a sex offender risk assessment scale approved by the Department of Corrections or a community corrections agency."

(Emphasis added.) ORS 181.585(1) contains two clauses, each of which has a distinct focus. The second clause establishes an objective criterion, *viz.*, conviction (or its functional equivalent) of one or more specified sexually related offenses. That criterion must exist in order to invoke the first clause, which states that a person "is" a predatory sex offender if that person is one who has been so convicted and who "exhibits" the requisite characteristics. Thus, the first clause defines the concept of a predatory sex offender in terms of a *present condition*. It follows, from that text alone, that the board's designation of anyone as a predatory sex offender, in order to be statutorily valid, must speak to that person's present condition.

It is significant, also, that ORS 181.585(1) speaks of a person who "exhibits *characteristics* showing a tendency to victimize or injure." (Emphasis added.) A "characteristic" is defined as "a trait, quality, or property or a group of them distinguishing an individual, group, or type: that which characterizes or is characteristic." *Webster's Third New Int'l Dictionary* 376 (unabridged ed 2002). A "trait" is "a distinguishing quality (as of personal character)." *Id.* at 2424. A "quality" is "a special or distinguishing attribute" and a "property" is "a quality or trait belonging to a person or thing,

esp.: a quality peculiar to an individual person or thing." *Id.* at 1858, 1818.

A past act, such as a past crime, does not appear to fit into any of the foregoing (admittedly, somewhat circular) definitions. A past act cannot describe a person or thing in the way that present qualities, attributes, and traits do. Although a past crime may be a basis for *inferring* that one or more traits, qualities, or "characteristics" presently exists, it does not in itself *qualify* as a characteristic.

The state attempts to erase that distinction by suggesting that past convictions can be a kind of characteristic. Along those lines, the state suggests that an individual may have a "characteristic" of having used threats against a sexual assault victim or the "characteristic" of having a prior sex offense conviction. But that suggestion is deaf to the ordinary usage of the word "characteristic." We may speak of an instance of past conduct as being "in character" or "out of character" (that is, consistent or inconsistent with a person's characteristics), and a certain behavior may become a "characteristic" of an individual if repeated often enough. But we ordinarily do not use the word "characteristic" to describe a single incident in a person's life.

Thus, ORS 181.585(1) appears to contemplate a board determination that focuses on whether a potential designee presently exhibits certain personal and social traits— like impulsiveness, alcoholism, social alienation, or a violent disposition—that are or may be associated with "a tendency to victimize or injure others." Obviously, the offender's past conduct, including his or her past crimes, logically may be relevant to that determination. Indeed, the idea that a person has a certain characteristic often arises out of a recognition that the person's past behavior has been consistent over time in some respect.

The question here, however, is whether the statute permits the board to determine that an offender exhibits the required characteristics based *solely* on the fact of the offender's past convictions and without regard to other seemingly relevant evidence. The text of ORS 181.585(1) does not support such a conclusion. Neither does anything in that subsection excuse the board from considering all the evidence

that logically is relevant to the issue that the board must decide, *i.e.*, whether the offender presently exhibits the required characteristics.[5]

The board argues that we must read the "exhibits characteristics" requirement of ORS 181.585(1) in the context of ORS 181.585*(2)*, which directs the board to "use" a risk assessment scale "approved by the Department of Corrections" in determining whether a person is a predatory sex offender. The board contends that, by enacting ORS 181.585(2), the legislature delegated to the department the task of "flesh[ing] out the concept of 'exhibit[ing] characteristics showing a tendency to victimize or injure others.' " The board further contends that, because its designation decision flowed directly from that broad delegation, our review must be limited to determining whether the designation comports with the general policy of the statute. The board concludes that there can be "little doubt" that designating an individual as a predatory sex offender based on objective aspects of their prior crimes comports with the more general policy of ORS 181.585 to 181.590.

For convenience in evaluating that contextual argument, we repeat the wording of ORS 181.585(2) here:

> "In determining whether a person is a predatory sex offender, an agency[, *i.e.*, an agency charged by the statute with the authority to make such a designation,] shall *use* a sex offender risk assessment scale approved by the Department of Corrections or a community corrections agency."

It is important to recognize at the outset that, by its terms, that subsection *adds nothing to the definition of predatory sex offender provided in subsection (1)*. Certainly, there is no hint in the statutory wording that the scale, the creation of which the statute authorizes, is supposed to be a substitute for the characteristics assessment process that the first subsection directs the board to carry out. Instead, the second subsection merely directs the designating agency to "use" a particular device, the sex offender risk assessment scale, in making the

---

[5] We would add that the evidence at issue here—expert psychological evaluations proffered by petitioner to the effect that he has a low risk for reoffending—appears to be logically relevant.

determination contemplated by subsection (1). The scale is not a product of the board—it is to be created or, at least, "approved," either by the department or a "community corrections agency." Nor does the statute contain any substantive criteria concerning what the department may and may not place in and measure by the scale. Subsection (2) simply directs the board to "use" the scale, and that is all.

Moreover, there is nothing about the definition in subsection (1) that, when read together with subsection (2), suggests a delegation of the sort that the board proposes. We note, in particular, that the phrase "exhibits characteristics showing a tendency to victimize or injure others" is not like the terms that we have identified as delegative in the past. *See, e.g., Springfield Education Assn. v. School Dist.*, 290 Or 217, 228, 621 P2d 547 (1980) ("good cause," "fair," "unfair," "undue," "unreasonable," all delegative terms). Instead, it appears to be a completed policy choice that the board is obliged to carry out. Clearly, the authorization to the board to "use" a risk assessment scale approved by the department does not transmogrify that policy choice. It simply requires the use of a tool to assist the board in carrying out its task.

The Court of Appeals majority also found a delegation (albeit a narrower one) in ORS 181.585(2), *viz.*, a delegation to the department to "develop a scale that identifies those characteristics or combination of characteristics that 'show a tendency to victimize or injure others.'" *V. L. Y.*, 188 Or App at 625. Although seemingly closer to the mark (the majority opinion appropriately describes the authority of the department in terms of a risk assessment scale), that proposition does not authorize the department to devise a scale that narrows or alters the board's inquiry or require the board to limit its inquiry to a scale that does not, in fact, relate to what the board is supposed to measure. Neither does ORS 181.585(2) contain any suggestion that the department or the board may exclude evidence that inherently is relevant to the intended inquiry. The statute's meaning, in that regard, is so clear from text and context that there is no need to proceed to legislative history.

When we consider the whole of ORS 181.585 in this plain and objective way, it becomes apparent that the statute

does not authorize the board to permit a scale created or "approved" by some other agency to serve as a substitute for the board's own task. The assessment of a potential predatory sex offender designee's present tendency to victimize or injure others remains work that the board must do, making such use of the assessment scale as inheres in that scale's relevance to the inquiry. The legislative directive to "use" the scale can stand for no more than that, unless this court ignores the substance of the task that the first subsection of ORS 181.585 specifically and unequivocally gives to the board.[6]

We turn, then, to the task of applying our conclusions about the intended effect of ORS 181.585 to the majority's delegation analysis. The Court of Appeals majority suggested that the delegation inherent in ORS 181.585(2) is "broad enough" to permit the department to develop a scale that relies solely on previous convictions. *V. L. Y.*, 188 Or App at 626. That proposition is true, the majority contended, because it is clear that an offender's previous convictions "bear on" or are "logically relevant" to the question of whether he or she exhibits the characteristics described in ORS 181.585(1). *Id.*

That line of reasoning obscures the issue. Petitioner's complaint is not that the risk assessment scale treats certain aspects of past crimes as *relevant* to the predatory sex offender designation, but that it treats those facts (or combinations of facts) as *conclusive* in that regard and, thus, excludes other evidence that is relevant to the issue. The question for this court, then, is whether the board reasonably can use a scale that relies solely on objective and easily ascertainable aspects of the offender's crime or crimes and excludes other evidence of the offender's current behavior and characteristics as the sole basis for determining that the

---

[6] Nothing that we have found (or that the Court of Appeals majority or the parties identified) alters the foregoing statement. No statutory context calls into question our interpretation. And, once we recognize the inescapable and directive content of ORS 181.585(1)(a), nothing in the Court of Appeals majority's extensive consultation with legislative history, *see V. L. Y. v. Board of Parole*, 188 Or App at 627-32 (describing history), demonstrates anything to the contrary.

offender *presently* "exhibits characteristics showing a tendency to victimize or injure others." The answer to that question, in our view, is "no."

The Court of Appeals majority asserted that the board "reasonably *could* conclude that an offender with a history of multiple convictions for sexual assault 'exhibits characteristics showing a tendency to victimize others.' " *V. L. Y.*, 188 Or App at 625 (emphasis supplied). That statement is unobjectionable, as far as it goes. But, as the Court of Appeals majority used it, the statement incorporates an unspoken assumption—that the prospective designee has had an opportunity to present countervailing evidence of his or her *current* characteristics and has failed to offer anything that outweighs an inference that might arise out of his criminal history. In our view, however, where the prospective designee has had no such opportunity (as is the case under the risk assessment scale at issue here), the Court of Appeals majority's statement loses its analytical force. Unless the prospective designee is given such an opportunity procedurally, the board's order will not be legally supportable.

We hold that, under the present statutory scheme, the board erred in using a procedure that permitted it to rely exclusively on the sex offender risk assessment scale in making its predatory sex offender designation. The board's order therefore must be reversed.[7]

We add the following note of clarification, because the import of this court's previous opinion in *Noble* does not appear to have been fully understood by the board: Under the present statutory formulation of the predatory sexual offender designation, any party facing such a designation, whatever the reasons for that designation, must be accorded the basics of due process. Those basics, at a minimum, include notice and the opportunity to be heard as to all factual questions at a meaningful time and in a meaningful manner. *Noble*, 327 Or at 498. Because of the nature of the statutory inquiry assigned to it (to determine whether a

---

[7] As noted, 338 Or at 48-49 n 3, petitioner has advanced a number of other arguments against the board's order. However, because petitioner may not face a further hearing or, if he does face one, may prevail, we decline to consider petitioner's other arguments.

potential designee "exhibits characteristics showing a tendency to victimize or injure others"), the board is not at liberty to substitute a purely documentary exercise for the hearing that any person faced with such a designation is entitled to receive.

The decision of the Court of Appeals is reversed. The order of the Board of Parole·and Post-Prison Supervision is reversed, and the case is remanded to the board for further proceedings.