Argued and submitted October 29, 1998, affirmed April 14, 1999

# STATE OF OREGON,
*Respondent,*

*v.*

# RANDY LEE MATTHEWS,
*Appellant.*

(970102CM; CA A98533)

978 P2d 423

Anne Morrison, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Edmonds and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Defendant, a convicted sex offender, appeals his conviction for failure to register his new address with a police agency within 30 days of changing his residence. ORS 181.599. He contends that, because he committed his underlying crimes before the effective date of the registration statute, the registration requirement cannot be applied to him retroactively and that, in all events, such retroactive application would offend constitutional protections against *ex post facto* laws. We conclude that, as a matter of statutory construction, the registration statute, *former* ORS 181.518 (1993),[1] applied to defendant and that requiring defendant, and similarly situated persons, to register as sex offenders does not constitute additional "punishment," triggering *ex post facto* protections. Accordingly, we affirm.

The relevant facts are undisputed. In June and December 1988, defendant committed acts which resulted in his convictions, in December 1989, on two counts of sex abuse in the second degree. ORS 163.425. The trial court suspended imposition of his sentence and assigned defendant to two consecutive four-year terms of probation. In 1989, the legislature enacted the original sex offender registration statute. Or Laws 1989, ch 984, § 2, *codified as former* ORS 181.518. In 1991, the legislature enacted the statute making failure to register as a sex offender a crime. Or Laws 1991, ch 389, § 4 *codified as* ORS 181.599 in 1995. In June 1994, defendant's probation was revoked, and he was sentenced to one year in prison. Defendant was released from prison in December 1994.

---

[1] The sex offender registration statute was originally enacted in 1989. Or Laws 1989, ch 984, § 3, *codified as former* ORS 181.518. *Former* ORS 181.518 was amended in 1991, Or Laws 1991, ch 389, § 2; in 1993, Or Laws 1993, ch 147, § 2; and in 1995, Or Laws 1995, ch 422, § 60. In 1995, Legislative Counsel renumbered it as ORS 181.595.

Defendant was first subject to the sex offender registration requirement under *former* ORS 181.518 (1993), upon his release from prison in 1994. We understand defendant to challenge the application of *former* ORS 181.518 (1993) to him, and, accordingly, our analysis refers to that version of the statute.

The version of the sex offender registration statute in effect at the time of defendant's release, *former* ORS 181.518 (1993), applied to any person who

"is discharged, paroled, or released on any form of supervised or conditional release from a jail, prison or other correctional facility in this state at which the person was confined as a result of conviction of a sex crime * * *."

With respect to such individuals, *former* ORS 181.518 (1993) required that:

"(2) Following discharge, release from active parole or other supervised or conditional release, the person shall provide, in writing, the address of the person to the Oregon State Police:

"(a) *Within 30 days of a change of residence*; and

"(b) Once a year regardless of whether the person changed address."[2] (Emphasis added.)

In June 1997, the state charged defendant with failure to register as a sex offender, ORS 181.599, alleging that he changed his residence "on or about October 13, 1996," and failed to register his new address with the local police within 30 days. ORS 181.599 provides, in part:

"A person who is required to register as a sex offender and who has knowledge of the registration requirement commits the crime of failure to register as a sex offender if the person fails, as required by ORS 181.595 [formerly ORS 181.518] * * * to:

"* * * * *

"(b) Register following a change of address[.]"

Before trial, defendant moved to dismiss the indictment, arguing that requiring him to comply with the registration requirement of *former* ORS 181.518(2)(a) (1993) was

---

[2] The registration statute at issue here is qualitatively different from the predatory sex offender designation and notification scheme addressed in *Noble v. Board of Parole*, 327 Or 485, 496-98, 964 P2d 990 (1998) (because designation decision "implicates a due process interest in liberty," inmate is entitled to notice and hearing before being designated as predatory sex offender).

an *ex post facto* application of that statute in violation of Article I, section 21, of the Oregon Constitution, and Article I, section 10, of the United States Constitution. Defendant asserted that the registration requirement constitutes additional "punishment" for sex offenses he committed before the effective date of *former* ORS 181.518 (1993). The trial court denied defendant's motion to dismiss,[3] and defendant was subsequently convicted of violating ORS 181.599.

On appeal, defendant assigns error to the trial court's denial of his motion to dismiss. Defendant argues that (1) *former* ORS 181.518 (1993) does not apply retroactively; and (2) even if the statute does apply retroactively, such application violates both state and federal constitutional prohibitions against *ex post facto* laws. Or Const, Art I, § 21; US Const, Art I, § 10. We review for errors of law. *State v. Gallant*, 307 Or 152, 155, 764 P2d 920 (1988).

■ Defendant argues that, as a matter of statutory construction, the registration requirement does not apply retroactively to sex offenders who committed their offenses before its effective date. We rejected that argument in *State v. Driver / Collins*, 143 Or App 17, 21, 923 P2d 1272, *rev den* 324 Or 395 (1996), and we adhere to our opinion.[4]

Here, defendant was released from incarceration in December 1994, almost five years after the registration statute's effective date. Thus, defendant was subject to the registration requirement upon his release from prison.

---

[3] The trial court's letter opinion denying defendant's motion to dismiss reasoned: (1) Under *State v. Driver / Collins*, 143 Or App 17, 21, 923 P2d 1272, *rev den* 324 Or 395 (1996), the registration requirement applies retroactively. (2) Punishing defendant for failure to register under ORS 181.599 was not an *ex post facto* violation because it was punishment for his *new* crime—failure to register—and not the underlying sex offenses. The trial court did not address whether the registration requirement itself constitutes punishment. On appeal, defendant argues only that application of ORS 181.518 to him violates *ex post facto* principles.

[4] Having concluded that *former* ORS 181.518 applied retroactively to sex offenders released from prison after the statute's effective date in 1989, we were nevertheless unable to determine whether it applied to the defendants in *Driver / Collins* because the record did not show when the defendants were first released from prison—*i.e.*, before or after the statute's effective date. We concluded that "until that issue is resolved on remand, [the defendants'] *ex post facto* claims are premature" and remanded the case for further proceedings. *Driver / Collins*, 143 Or App at 23.

■     Defendant next argues that, because he committed his crimes before the registration statute was enacted, subjecting him to the registration requirement imposes additional "punishment" in violation of the state and federal constitutional prohibitions against *ex post facto* laws. Or Const, Art I, § 21; US Const, Art I, § 10.[5] An *ex post facto* law is one that "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." *State v. Wille*, 317 Or 487, 502, 858 P2d 128 (1993) (quoting *Collins v. Youngblood*, 497 US 37, 42, 110 S Ct 2715, 111 L Ed 2d 30 (1990)). Because the registration statute applies retroactively to defendant, the issue reduces to whether its requirements constitute increased "punishment" for defendant's underlying sex offenses.

In resolving that issue, we engage in a two-step inquiry:

> "The first question is whether the legislative purpose in enacting the * * * [sex offender registration requirement] was punitive. If it was, the * * * [registration requirement] constitutes punishment. Determining that the purpose was not punitive does not end the inquiry, however, but simply leads to the second question, whether the * * * [registration requirement] is so punitive as to negate the nonpunitive intention."

*Gress v. Board of Parole*, 143 Or App 7, 15-16, 924 P2d 329, *adhered to as modified* 144 Or App 375, 927 P2d 138 (1996), *rev dismissed* 326 Or 68 (1997), *vacated and dismissed* 152 Or App 491, 950 P2d 418 (1998) (reasoning readopted and reaffirmed by *Frey v. Board of Parole*, 152 Or App 462, 464, 950 P2d 418, *rev den* 327 Or 173 (1998)) (designation of an individual as a predatory sex offender based on a sex offense he committed before the effective date of ORS 181.585 did not constitute punishment in violation of the *ex post facto* clause).

---

[5] Article I, section 21, of the Oregon Constitution provides, in part:

"No *ex post facto* law * * * shall ever be passed * * *."

Article I, section 10, of the Constitution of the United States, provides, in part:

"No State shall * * * pass any * * * ex post facto Law * * *."

The Oregon Supreme Court has consistently construed the Oregon and federal *ex post facto* clauses "without distinguishing them." *State v. Wille*, 317 Or 487, 502, 858 P2d 128 (1993).

■ ■ With respect to the first, "legislative purpose" inquiry, the legislature expressly declared that "[t]he purpose of ORS 181.517, ORS 181.518 and ORS 181.519 and sections 4 [making failure to register a crime] to 6 of this Act is to assist law enforcement agencies in preventing future sex offenses." Or Laws 1991, ch 389, § 7. Our review of the legislative history in its entirety confirms that that statement comports with other contemporaneous expressions of legislative purpose.[6] The legislative history indicates that the intended purpose of the sex offender registration requirement was to assist law enforcement in protecting the community from future sex crimes. In particular, the legislature expected the registration requirement to achieve that goal both by creating a sex offender database to facilitate crime prevention and investigation *and* by deterring past sex offenders from committing future crimes.[7] The legislative history confirms that the registration requirement was not enacted to exact retribution for past sex offenses,[8] but,

---

[6] *See Gress*, 143 Or App at 15 n 11 ("We are determining whether the legislature's purpose was punitive in order to decide the constitutional effect of that purpose, not the meaning of the statute. The analysis in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), is therefore irrelevant to our determination.").

[7] The remarks of Representative Bell, who carried the bill, exemplify expressions of legislative intent to prospectively assist law enforcement agencies:

"Given our limited understanding of this offender group, it becomes increasingly important for us to strengthen our capacity to manage and supervise this population in the interest of public safety. The enactment of this bill will provide law enforcement agencies with an easily accessible database as an aid in solving those stranger-to-stranger crimes when there is no suspect.

"It is hoped that registration will also act as a deterrent to those convicted sex offenders living in our communities. Perhaps if they know local law enforcement officials have their name and address with a description of their past offense, it may stop them from hurting innocent people again."

Tape recording, House Floor Debate, HB 2407, March 12, 1991, Tape 6, Side I.

[8] In fact, the Chair of the House Judiciary Subcommittee on Family Justice, Representative Kelly Clark, noted that:

"[I]t might be important under the Oregon Constitution that we make clear here that the legislative intent is to prevent future sex offenses against children and that *the registry is not based on some sort of notion of retribution* * * *." Tape recording, House Judiciary Subcommittee on Family Justice, HB 2407, February 18, 1991, Tape 36, Side I (emphasis added).

Representative Clark also stated:

"We want the information in the registry for purposes of law enforcement and to protect against future crimes. * * * [W]e're not intending by this to use the

instead, to create a database of past sex offenders' identities and addresses to facilitate investigations of sex crimes.

Defendant argues, nevertheless, that, because the legislature anticipated that the sex offender registration requirements would have some deterrent effect, that requirement is impermissible "punishment." Citing *United States v. Halper*, 490 US 435, 448, 109 S Ct 1892, 104 L Ed 2d 487 (1989), a double jeopardy case, defendant asserts that, where the legislative purpose is—even partially—to deter future crimes, the statute must be considered punitive.[9]

■ In *Hudson v. United States*, 522 US 93, 118 S Ct 488, 139 L Ed 2d 450, 461 (1997), also a double jeopardy case, the United States Supreme Court specifically rejected *Halper's* premise that all sanctions with some deterrent effect are "punishment" for constitutional purposes. *Cf. State v. James*, 159 Or App 501, 509, 978 P2d 415 (1999) (discussing *Hudson's* rejection of *Halper*).[10] We see no reason to apply a stricter rule in the *ex post facto* context. The mere fact that a statute created primarily for a legitimate regulatory purpose may have the secondary effect of deterring future crimes does not render that statute punitive for *ex post facto* purposes. *Accord State v. Ward*, 123 Wash 2d 488, 869 P2d 1062, 1073 (1994) ("Even if a secondary effect of [sex offender] registration is to deter future crimes in our communities, we decline to hold that such positive effects are punitive in nature.").

We proceed to the second aspect of the inquiry: Whether the registration requirement is so punitive in "nature or effect as to negate the nonpunitive intention."

---

* * * approach of posting a sign * * * that follows this person for the rest of their life." Tape recording, House Judiciary Subcommittee on Family Justice, HB 2407, February 18, 1991, Tape 35, Side II.

[9] *Cf. State v. Frasieur*, 157 Or App 681, 682, 972 P2d 908 (1998) (stating that "the United States Supreme Court has effectively overruled *Halper*" by returning to its previous understanding of when civil penalties constitute criminal punishment for Double Jeopardy purposes in *Hudson*).

[10] Moreover, in *State v. Phillips*, 138 Or App 468, 909 P2d 882, *rev den* 323 Or 114 (1996), we held that, under *Halper*, a civil penalty constitutes punishment for purposes of the Double Jeopardy clause only if deterrence is the *exclusive* goal of the statute. *See id.* at 473 (statute requiring one-year suspension of driving privileges of DUII defendant was not punitive because purpose was to protect the public by removing dangerous drivers from the road, even though sanction might also serve to deter future DUIIs).

*Gress*, 143 Or App at 16. *See also Kansas v. Hendricks*, 521 US 346, 361, 117 S Ct 2072, 138 L Ed 2d 501 (1997) ("Although we recognize that a 'civil label is not always dispositive,' we will reject the legislature's manifest intent only where a party challenging the statute provides 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate the [the state's] intention' to deem it 'civil.' ") (citations omitted).

The appropriate meaning or content of "punishment" in this context is somewhat unsettled. No decision of the United States Supreme Court or of the Oregon appellate courts has comprehensively and conclusively identified the attributes of punishment for *ex post facto* purposes. Although the United States Supreme Court announced a clear test for determining when a sanction constitutes punishment in the Double Jeopardy clause context, *Kennedy v. Mendoza-Martinez*, 372 US 144, 168-69, 83 S Ct 554, 9 L Ed 2d 644 (1963),[11] the Court has sent mixed signals as to whether, or to what extent, that analysis applies in *ex post facto* cases. *Compare United States v. Ursery*, 518 US 267, 288, 116 S Ct 2135, 135 L Ed 2d 549, 567-68 (1996) (cautioning that decisions on what constitutes "punishment" for constitutional purposes should be read to apply only to the specific constitutional provision and facts at issue) *with Hendricks*, 521 US at 369 ("Our conclusion that the Act is nonpunitive thus removes an essential prerequisite for both Hendricks' double jeopardy and *ex post facto* claims.").

We conclude, nevertheless, that at least some aspects of the *Kennedy* analysis are transferable to the *ex post facto* context. Without purporting to identify an exhaustive list of factors relevant to every case, we conclude that the following considerations govern our determination of whether the sex offender registration requirement at issue

---

[11] "Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned * * *." *Kennedy*, 372 US at 168-69 (footnotes omitted).

here is punitive in nature and effect: (1) Has the requirement been historically regarded as a punishment? (2) Does the requirement involve an affirmative disability or restraint? (3) Is the scope and rigor of the registration requirement excessive in relation to its purported nonpunitive purpose? Applying those considerations, we conclude that the sex offender registration requirement is not "in its nature or effect so punitive as to negate the [legislature's] nonpunitive purpose." *Gress*, 143 Or App at 16.

Historically, statutes requiring registration of criminal offenders have not been regarded as punitive. *See generally Lambert v. California*, 355 US 225, 229, 78 S Ct 240, 243, 2 L Ed 2d 228 (1957) (describing a city ordinance requiring felons to register as a regulatory requirement designed to assist law enforcement agencies).

Defendant asserts, however, that the registration requirement is akin to both permanent government surveillance and a "badge[ ] of shame, with [its] intended consequent effect of ostracism and humiliation," which, defendant argues, are sanctions traditionally regarded as punishment. We disagree. The effect of requiring defendant to report his current address to a police agency does not rise to a level of surveillance that courts have traditionally regarded as punishment.[12] Nor are we persuaded that the registration requirement places a "badge of shame" on defendant. The registration requirement merely updates an already existing LEDS (Law Enforcement Data Systems) entry describing defendant and his past crimes. Any continuing "badge of shame" that defendant bears is the result of his sexual abuse convictions, which are a permanent part of his criminal record. *See* ORS 137.225(5)(c)(A) (prohibiting the expunction of convictions for "[a]ny sex crime"). Thus, we conclude that the

---

[12] Defendant points only to *Weems v. United States*, 217 US 349, 380-82, 30 S Ct 544, 54 L Ed 2d 793 (1910), in which the Court held that a sentence of permanent government surveillance was cruel and unusual punishment. We are not persuaded by defendant's attempt to draw a parallel between lifetime government surveillance and the address registration requirement. The defendant in *Weems* was not permitted to relocate without permission from a government authority and was subject to constant government surveillance, whereas defendant here satisfies the requirements of *former* ORS 181.518 by reporting his address to a police agency.

registration requirement is not a sanction traditionally regarded as punishment.

Defendant next contends that the registration requirement implicates an affirmative disability or restraint on defendant's liberty, both because it requires defendant to undertake the affirmative action of registering and because it subjects defendant to "police scrutiny, control, and monitoring" and limits his "liberty and expectation of privacy." We disagree.

The demands of complying with the registration requirement—the additional expenditure of time and energy, and any concomitant limitation on a registrant's freedom of action—are minimal. Any "burden" associated with compliance is so incremental that it does not approach the level of punishment. *See State v. Burke*, 109 Or App 7, 11, 818 P2d 511 (1991) (holding that the fact that a retroactive law may have a deleterious effect on an individual does not mean that it is *ex post facto* punishment); *see also Hudson*, 522 US 93 at 104 (exclusion of petitioners from "further participation in the banking industry" was not an affirmative disability or restraint because such exclusion was "nothing approaching the infamous punishment of imprisonment").

Nor does the registration requirement, in and of itself, subject defendant to police scrutiny, control, and monitoring. The statute does not authorize police to engage in increased or intrusive surveillance of registrants. Rather, to the extent that the police may regard registered sex offenders as possible suspects in the investigation of sex crimes, that is, ultimately, a function of the registrant's criminal history. The registration requirement merely facilitates the investigative process.[13]

---

[13] Defendant also argues that the registration requirement imposes an affirmative disability or restraint because that information, once entered into the LEDS database, is available to certain departments and agencies and, thus, "could affect defendant's potential employability * * *, impair his freedom to travel (that is, to live where he chooses) and perhaps even endanger his safety." Defendant's concerns in that regard are unfounded. In contrast to the predatory sex offender notification scheme at issue in *Noble*, 327 Or at 491-92, the registration statutes permit disclosure only to specifically designated entities, not to the public. *See* ORS 181.537(1) (authorizing the Department of Human Resources and the Employment Department to "request" criminal offender information); ORS 181.539(1) (authorizing the Teacher Standards and Practices Commission and Department of

Finally, we consider whether the registration requirement is excessive in relation to its nonpunitive purpose of assisting law enforcement agencies in preventing and facilitating the investigation of future sex crimes. Defendant argues that, because most sex crimes are committed by someone the victim knows, the maintenance of the LEDS database is not rationally related to the goal of assisting law enforcement agencies with the prevention of future sex crimes. Accepting for the sake of argument defendant's factual premise, we nonetheless disagree with his conclusion. Requiring sex offenders to register their current address with a police agency is minimally intrusive and rationally related to the goal of keeping the information in the LEDS database up to date.[14] The fact that the LEDS database will not assist law enforcement with *all* sex crimes does not make the registration requirement excessive in relation to the important regulatory goal of assisting law enforcement with stranger-to-stranger sex crimes. We conclude that the burden placed on sex offenders by the registration requirement is not excessively burdensome in relation to the legislature's regulatory goal of assisting law enforcement.

The sex offender registration scheme is not punitive in purpose or in effect. Accordingly, the retroactive application of the registration statute to defendant does not violate the *ex post facto* prohibitions of the state and federal constitutions.

Affirmed.

---

Education to request and receive information). The record is devoid of any evidence that any information regarding defendant has been disclosed.

[14] We note that ORS 181.600 provides that, 10 years after release, sex offenders can petition for relief from the registration requirement and are entitled to such relief upon a showing of clear and convincing evidence of rehabilitation.