Argued and submitted February 19, affirmed May 29, 2002

# KENT LEE MEADOWS,
*Petitioner,*

*v.*

# BOARD OF PAROLE
# AND POST-PRISON SUPERVISION,
*Respondent.*

## A107228

47 P3d 506

Irene B. Taylor, Deputy Public Defender, argued the cause for petitioner. With her on the brief was David E. Groom, State Public Defender.

Janet Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Petitioner petitions for judicial review of an order of the Board of Parole and Post-Prison Supervision designating him a predatory sex offender pursuant to ORS 181.585 *et seq*. He asserts that application of the predatory sex offender law to him violates numerous state and federal constitutional provisions. We affirm.

Before addressing plaintiff's particular circumstances and arguments, it is useful to "set the scene" by summarizing the framework of Oregon law pertaining to the designation of predatory sex offenders. In 1993, the legislature first enacted statutes authorizing the designation of predatory sex offenders. Or Laws 1993, ch 807. ORS 181.585 defines "predatory sex offender" and prescribes the standard and method by which predatory sex offender status will be determined. ORS 181.586 through ORS 181.589 pertain to notice given to the public regarding predatory sex offenders.

Pursuant to ORS 181.585(2), a predatory sex offender designation depends on the application of "a sex offender risk assessment scale approved by the Department of Corrections[.]" As pertinent here, the Department of Corrections has developed an assessment scale that takes into account numerous factors, both negative and positive. The assessment scale provides three ways in which a predatory sex offender designation may be made: (1) a person who is assigned one of three specific "automatic override" negative factors is automatically designated a predatory sex offender;[1] (2) a person who is assigned any three of a specific group of other negative factors ("asterisk factors") is automatically designated a predatory sex offender;[2] and (3) a person whose total score based on a range of various "negative" and "positive" factors equals or exceeds "-50" may be designated a predatory sex offender.[3]

---

[1] The automatic override factors are forcible rape, use of a weapon during commission of the offense, and "men who molest boys (multiple male victims)."

[2] The asterisk factors are: history of sexual crimes, history of sex offense convictions, stranger to victim, multiple victims on current sex offense conviction, use of weapons or threats, technical violation related to sexual assault cycle, and prior nonsexual criminal history.

[3] Negative factors include, for example, that an offender shows no empathy for the victim, is not in treatment, or exhibits impulsive or compulsive behavior.

In 1998, the Oregon Supreme Court held in *Noble v. Board of Parole*, 327 Or 485, 964 P2d 990 (1998), that parolees have a procedural due process right to hearings before being designated as predatory sex offenders. After the *Noble* decision, the Board adopted a policy to determine when an in-person evidentiary hearing would need to be held regarding a predatory sex offender designation. Under that policy, individuals who fall within either of the first two categories—at least one automatic override factor or at least three "asterisk" factors—are not afforded a hearing before a predatory sex offender designation is made. They are, however, afforded an opportunity to submit written objections. Individuals who fall only within the third category—a score of at least "-50"—are afforded a *Morrissey*-type hearing before the designation goes into effect.[4]

Petitioner was convicted in 1993 of first-degree sexual abuse and second-degree sodomy. The crimes occurred between 1986 and 1991, and each involved a different male child victim. Petitioner was released on parole in February 1998, and was designated a "predatory sex offender" pursuant to ORS 181.585.

Petitioner's risk assessment score that underlay his designation indicated two alternative and independently sufficient bases for that designation. First, petitioner's conduct triggered the "men who molest boys (multiple male victims)" automatic override. Second, petitioner was assigned numerous negative factors on the assessment scale, including: history of sex offense convictions; multiple victims on current sex offense convictions; victim under 14 years of age; multiple paraphilia; impulsive or compulsive behavior; primary sexual preference is children; community instability; substance abuse involved in sexual offending behavior; substance abuse problems; use of sexually arousing materials; and no support

---

Positive factors include, for example, that the offender has passed a polygraph, has successfully completed an approved treatment program, or has a support system that reinforces compliance and treatment.

[4] In *Morrissey v. Brewer*, 408 US 471, 489, 92 S Ct 2593, 33 L Ed 2d 484, (1972), the Court concluded that an offender whose parole was being revoked was entitled to notice of the claimed parole violation, disclosure of the evidence against the offender, an opportunity to be heard and present evidence, the right to confront and cross-examine witnesses, a neutral factfinder, and a written statement by the factfinder as to the evidence relied upon to revoke parole.

system or support system tolerates/supports denial. Based on the numerical values assigned to those negative factors, petitioner was given a risk score of "-95," which, by itself, permitted the Board to designate petitioner as a predatory sex offender based on the numeric score.

In March 1998, petitioner was first informed of his designation, and he sought administrative review by the Board, challenging the accuracy of that designation. In its initial response to petitioner's request for administrative review, the Board concluded that petitioner was not entitled to the procedures it had adopted after *Noble* because petitioner necessarily would have been classified as a predatory sex offender regardless of any further evidence adduced at a hearing, given that his crimes had involved multiple male victims. Shortly thereafter, the Board reconsidered its initial order and determined that petitioner was, in fact, entitled to some of the post-*Noble* procedures it had adopted. The Board therefore gave petitioner the opportunity to submit written objections to the risk assessment on which it had based his predatory sex offender designation. The Board did not, however, afford petitioner an in-person evidentiary hearing, with rights of cross-examination.

Petitioner filed written objections challenging most of the negative factors used in his assessment. However, petitioner specifically did not contest that his victims were under 14 years of age and that he had used sexually arousing materials. Moreover—and of particular significance to our disposition of petitioner's due process challenge, *see* 181 Or App at 579—the only issue petitioner raised concerning the "men who molest boys (multiple male victims)" automatic override factor was that it was inapplicable because, under the Board's own policy, that factor "is to be applied only for one year. Since this expired many months ago during my predator designation, it should not be applied again."[5] Petitioner did not challenge the factual predicates for the use of that "automatic override" factor.

---

[5] Petitioner cited no authority for that proposition, and does not renew that argument on judicial review.

In its administrative review response to petitioner's objections, the Board rejected petitioner's challenges to the scoring of the various negative factors that resulted in his "-95" score. In addition, the Board stated:

> "The automatic override category for 'men who molest boys' applies because Mr. Meadows was convicted of molesting two boys, one was 8-9 years old and one was 11 years old at the time of the crimes. This is an automatic override item on the scale because statistically men who molest multiple boys pose an extremely high risk of reoffense, generally have a very high number of unreported victims and are more difficult to treat. The Board concurs with this item being a very strong indicator of risk and finds that it alone would justify a predatory designation in this case."

The Board therefore upheld its previous determination that petitioner qualified as a predatory sex offender.

■ Petitioner seeks judicial review of the Board's order. He raises four constitutional challenges: First, retroactive application of the predatory sex offender registration law to him violates the *ex post facto* provisions of both the state and federal constitutions.[6] Second, community notification of a person's predatory sex offender status constitutes punishment and violates the double jeopardy protections of both state and federal constitutions.[7] Third, a predatory sex offender designation constitutes cruel and unusual punishment in violation of Article I, section 16, of the Oregon Constitution.[8] Finally, petitioner argues that the Board deprived him of due process by denying him an in-person evidentiary hearing on his designation as a predatory sex offender.[9]

---

[6] Article I, section 21, of the Oregon Constitution, provides, in pertinent part, that "[n]o *ex post facto* law * * * shall ever be passed[.]" Article I, section 10, of the United States Constitution, provides, in pertinent part, that "[n]o State shall * * * pass any * * * ex post facto Law[.]"

[7] Article I, section 12, of the Oregon Constitution, provides, in pertinent part, that "[n]o person shall be put in jeopardy twice for the same offence." The Fifth Amendment to the United States Constitution provides, in pertinent part: "No person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb[.]"

[8] Article I, section 16, of the Oregon Constitution, provides, in part, "Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

[9] The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, in pertinent part, that states shall not "deprive any person of life, liberty, or property, without due process of law."

At least some aspects of petitioner's arguments have been addressed in previous opinions. In *State v. Frey*, 152 Or App 462, 950 P2d 418, *rev den* 327 Or 173 (1998), we readopted our reasoning from *Gress v. Board of Parole*, 143 Or App 7, 924 P2d 329, *adhered to as modified* 144 Or App 375, 927 P2d 138 (1996), *rev dismissed* 326 Or 68 (1997), *vacated and dismissed* 152 Or App 491, 950 P2d 418 (1998). In *Gress*, we rejected an argument that retroactive designation as a predatory sex offender violated *ex post facto* provisions of either the state or federal constitution. Although we concluded that the designation itself did not constitute punishment, we left open the question whether designation in conjunction with community notification would constitute punishment, concluding that that issue was not ripe for review. 143 Or App at 7; 144 Or App at 377-78. In *Noble*, the Oregon Supreme Court rejected the "unripeness" rationale of *Gress*:

> "For purposes of petitioner's claims, we do not separate the Board's designation decision and the ensuing notification decision. Although there is a two-step process in place, both steps are directed at a single goal—community notification. Designation sets the notification process in motion. Once a designation is made, the agency that supervises the designee *shall* notify anyone whom the agency determines is appropriate that the person is a predatory sex offender. ORS 181.586(1). Indeed, the sole purpose and effect of a designation decision is to set the stage for notification. Although the Board itself may not make the decision to notify the community, its designation is directed only at that outcome. Under those circumstances, petitioner can raise this challenge, which looks beyond the narrow and immediate effects of designation to its ultimate purpose and effect, in the context of judicial review of the Board's decision." 327 Or at 491.

In light of *Noble*, we conclude that this case presents the question of whether predatory sex offender designation, in conjunction with community notification, violates the *ex post facto* provisions of either the state or federal constitutions. As explained below, we conclude that it does not.

In *State v. Matthews*, 159 Or App 580, 978 P2d 423 (1999), we addressed *ex post facto* arguments that were somewhat similar to those made here. In *Matthews*, the defendant, a sex offender who had been released, was convicted of

failing to register his new address as required by statute.[10] He argued that retroactive application of the sex offender registration requirements violated state and federal *ex post facto* prohibitions because the registration increased the punishment for his earlier criminal conduct. *Id.* at 585. We noted that the determination of whether something is "punishment" for purposes of *ex post facto* analysis involves a two-step inquiry: If the legislative purpose in enacting the law is punitive, then the requirement at issue constitutes punishment; if the legislative purpose is nonpunitive, then the requirement constitutes punishment only if it is "so punitive as to negate the nonpunitive intention." *Id.* (quoting *Gress*, 143 Or App at 16). We determined in *Gress* that the legislative intent of the predatory sex offender registration statute is not punitive:

> "Giving [those who have committed sexual offenses in the past and who have a likelihood of committing such offenses in the future] a special designation primarily serves the regulatory purpose of identifying offenders who require special treatment or other attention, either while incarcerated or while on supervised or unsupervised release. That is not a punitive purpose." 143 Or App at 16.

We adhere to that conclusion, although we recognize that the Supreme Court in *Noble* described the statutes in question as being directed at the goal of community notification. Petitioner argues that the intent of the legislature in enacting these laws was deterrence of future sex offenses. He posits that, because deterrence is one of the traditional goals of punishment, a law that is intended to have a deterrent effect is therefore intended to have a punitive effect. In *Matthews*, we explained that the "mere fact that a statute created primarily for a legitimate regulatory purpose may have the secondary effect of deterring future crimes does not render that statute punitive for *ex post facto* purposes." 159 Or App at 587 (citing cases). Petitioner suggests that, for ORS 181.585, the deterrent effect intended by the legislature

---

[10] We noted in *Matthews* that the statute at issue in that case is "qualitatively different" from the predatory sex offender statutes at issue in the present case. 159 Or App at 583 n 2. The most notable difference is that community notification was not a potential issue under the statute described in *Matthews*.

is primary rather than secondary and thus must be regarded as punitive. We disagree.

The primary purpose of the predatory sex offender statute is crime prevention, but crime prevention and deterrence are not interchangeable concepts. Deterrence is "the restraint and discouragement of crime by fear (as by the exemplary punishment of convicted offenders)." *Webster's Third New Int'l Dictionary*, 617 (unabridged ed 1993). Certainly, it is possible that the community notification procedures at issue here might deter some people from committing sex crimes because they fear community notification. However, the stated legislative intent that the community notification provisions was to "inform parents of danger, and to warn children away from a potentially dangerous person." Senate Judicial Committee, HB 2759, June 23, 1993, Ex E (statement by the sponsor of the bill, Representative Peter Courtney). In short, the legislature's intent was to provide warning to potential victims, which certainly is an intent to prevent crimes, but it is not an intent to deter potential criminals from committing crimes through use of fear. We thus adhere to our previous conclusion that the intent of the legislature in enacting the predatory sex offender law was not punitive.

We turn to the question whether the nature and effects of this law are so punitive as to negate the legislature's nonpunitive intentions. In *Matthews*, we stated that certain considerations are relevant to this inquiry: "(1) Has the requirement been historically regarded as punishment? (2) Does the requirement involve an affirmative disability or restraint? (3) Is the scope and rigor of the * * * requirement excessive in relation to its purported nonpunitive purpose?" 159 Or App at 589. Petitioner asserts that community notification has historically been regarded as punishment, is an affirmative disability and restraint, and is excessive in relation to any nonpunitive purpose.

We turn first to the question whether community notification concerning sex offenders has historically been regarded as punishment. Petitioner contends that it has, citing *State v. Myers*, 260 Kan 669, 923 P2d 1024 (1996), *cert den* 521 US 1118 (1997), for the proposition that such laws

subject sex offenders to vigilantism, impair their opportunities to work, and damage their abilities to develop and maintain stable relationships. He likens community notification to branding or public shaming, which have historically been considered punishment.

*Myers,* however, represents an isolated minority view. Most courts, in contrast to the Kansas court in *Myers,* have held that community notification is not analogous to anything that historically has been regarded as punishment for purposes of *ex post facto* analysis.[11] We endorse, and adopt, the Third Circuit's reasoning in *E. B. v. Verniero,* 119 F3d 1077, 1099-100 (3rd Cir 1997), *cert den* 522 US 1109 (1998):

> "[We do not] accept the suggested analogy between notification's republication of information publicly available at the time of a sex offender's trial and the holding of a convicted defendant up to public ridicule. Public shaming, humiliation and banishment all involve more than the dissemination of information. State dissemination of information about a crime and its perpetrators was unnecessary in colonial times because all in the colonial settlement would have knowledge of these matters. Rather, these colonial

---

[11] The federal circuits appear to be unanimous on this point, and nearly unanimous in upholding sex offender registration laws against *ex post facto* challenges. *See, e.g., Moore v. Avoyelles Correctional Center,* 253 F3d 870 (5th Cir), *cert den* _____ US _____ (2001) (Louisiana sex offender registration and neighborhood notification statute did not violate federal *ex post facto* provision); *Femedeer v. Haun,* 227 F3d 1244 (10th Cir 2000) (Utah sex offender registration and notification statute permitting unrestricted disclosure of information via the Internet did not violate *ex post facto* provision); *Doe v. Pataki,* 120 F3d 1263 (2nd Cir 1997), *cert den* 522 US 1122 (1998) (New York sex offender registration and notification law was not analogous to traditional stigmatization penalties or banishment); *E.B. v. Verniero,* 119 F3d 1077 (3rd Cir 1997), *cert den* 522 US 1109 (1998) (concluding that New Jersey's "Megan's Law" did not involve punishment for purposes of *ex post facto* analysis).

The Ninth Circuit has upheld one sex offender registration law against an *ex post facto* challenge and has concluded that application of another one does constitute an *ex post facto* violation. *Compare Russell v. Gregoire,* 124 F3d 1079 (9th Cir 1997), *cert den* 523 US 1007 (1998) (Washington sex offender registration and notification law that permits agencies to reveal relevant and necessary information about a sex offender when necessary for public protection held not to have punitive effect) *with Doe v. Otte,* 259 F3d 979 (9th Cir 2001), *cert granted* _____ US _____ (2002) (Alaska sex offender registration and notification law that requires dissemination of sex offender registration information to any person for any purpose deemed punitive because it imposes substantial burdens and disabilities on those required to register that are excessive in relation to its nonpunitive purpose).

practices inflicted punishment because they either physically held the person up before his or her fellow citizens for shaming or physically removed him or her from the community.

"The 'sting' of [New Jersey's sex offender notification scheme] results not from their being publicly displayed for ridicule and shaming but rather from the dissemination of accurate public record information about their past criminal activities and a risk assessment by responsible public agencies based on that information. This distinction makes a substantial difference when one looks for the relevant historical understanding of our society. Dissemination of information about criminal activity has always held the potential for substantial negative consequences for those involved in that activity. Dissemination of such information in and of itself, however, has never been regarded as punishment when done in furtherance of a legitimate governmental interest."

The second consideration pertaining to the statutes' alleged punitive character is whether the registration requirement and community notification involve an affirmative disability or restraint. Petitioner contends that the requirement that he report to police or supervising agencies, that he provide information about changes of address, and that he submit to fingerprinting and photographing should all be considered affirmative disabilities or restraints. He also argues that community notification creates a risk that an offender will be ostracized and possibly even harmed by community members who have received notification. The state points out that registration and community notification do not place any restraint on where a person lives, do not restrict a person's movement, and do not restrict a person's employment, and, thus, do not qualify as affirmative disabilities or restraints.

We agree with the state that, because the laws do not restrict an offender's freedom, they cannot be viewed as a restraint. But, whether the laws impose an affirmative disability is a somewhat closer question. In *Noble*, the Oregon Supreme Court recognized that an offender whose community has been notified of his designation as a sexual predator could face "social ostracism, loss of employment opportunities, and significant likelihood of verbal and, perhaps, even

physical harassment[.]" 327 Or at 496. The question, then, is whether such consequences are properly deemed to be "affirmative disabilities" *that are a result of the registration and community notification laws*.

The short—and dispositive—answer is that, at the most fundamental level, the consequences noted in *Noble* are the result of the offender's crimes and not of the designation and disclosure statutes. The statutes do not "affirmatively" impose those negative consequences. Rather, those consequences are byproducts of the nature of the offender's crimes and of people knowing about a sex offender's status—which can occur in many ways, and not merely by way of a community notification statute. While we acknowledge the possibility that community notification may contribute to the difficulties that a sex offender has in trying to integrate into a community, those difficulties are not "affirmative disabilities" that are caused by the law itself.

The final "punitive character" consideration is whether the scope and rigor of the law's registration and community notification requirements are excessive in relation to its nonpunitive purpose. *Matthews*, 159 Or App at 589. Petitioner argues that the notification scheme is overbroad, and emphasizes that statutes from other jurisdictions often limit the dissemination of sex offender information to individuals or communities deemed to need the information.[12]

ORS 181.586(2) permits agencies supervising predatory sex offenders to notify families, prior victims, and "[r]esidential neighbors and churches, community parks, schools, convenience stores, business and other places that children or other potential victims may frequent[.]" Further, ORS 181.587 provides that agencies supervising predatory sex offenders "shall make any information regarding the person that the agency determines is appropriate * * * available to any other person upon request." That statute does contain a limitation, however, that such information need not be released if "the information would substantially interfere

---

[12] *See, e.g., Roe v. Office of Adult Probation*, 125 F3d 47 (2nd Cir 1997); *Russell*, 124 F3d at 1090; *Paul P. v. Farmer*, 80 F Supp 2d 320 (D NJ 2000); *State v. C.M.*, 746 So 2d 410 (Ala Crim App 1999); *State v. Myers*, 260 Kan at 669.

with the treatment or rehabilitation of the supervised person[.]" *Id.*

Those statutes permit broader dissemination of information than allowed under some other states' statutes. Still, making predatory sex offender registration information available to the general public, rather than only to specific individuals deemed to need the information, does not render the statutory scheme excessive *vis-à-vis* its nonpunitive purpose.

*Femedeer v. Haun*, 227 F3d 1244, 1253 (10th Cir 2000), is instructive. In *Femedeer*, the court considered the constitutionality of a Utah sex offender registration and notification system that permits disclosure of information to the public at large. 227 F3d at 1247. Under those statutes, "[a]ccess to the information is not controlled in any way; anyone with access to the Internet can access all of the registry information, regardless of their place of residence or any other specific need." *Id.* at 1248. In reversing the district court's conclusion that such broad dissemination of information was excessive in relation to the nonpunitive purpose of the law, the Tenth Circuit observed:

> "The district court failed to consider, however, that there will be a concomitant decline in the global audience's desire to receive Utah's registry information. That is, the farther removed one is from a sex offender's community and from Utah generally, the less likely one will be to have an interest in accessing this particular registry. To a large extent, therefore, the dangers resulting from widespread availability are negated by the decreasing likelihood that the information will actually be obtained." *Id.* at 1253.

We agree with the Tenth Circuit's rationale. The active notification provisions of ORS 181.586 concern notification to people in the vicinity of the offender or with whom the offender previously has had contact. ORS 181.587, which permits disclosure of information to members of the general public upon request, provides for even broader dissemination of the information. However, as a practical matter, the *actual* audience for the information is essentially self-defining and self-limiting: The information will be obtained by people who choose to seek it. Bluntly, although the information could, in

the abstract, be available to millions of people, the vast majority of those who will take the time and effort to obtain the information will be those who fall within the statute's remedial ambit, particularly including parents or others responsible for young children who might come into contact with the offender.

In sum, we do not view the dissemination of the information contained in the predatory sex offender registration databases as a "punishment" that is excessive in relation to the nonpunitive intent of the law. We conclude that retroactive application of the sex offender registration and notification statutes, ORS 181.585 *et seq.*, do not violate the *ex post facto* provisions of Article I, section 21, of the Oregon Constitution.

Petitioner next contends that retroactive application of the sex offender registration and notification statutes at ORS 181.585 *et seq.* violate the *ex post facto* provisions of Article I, section 10, of the United States Constitution. The only authority that petitioner cites is *Carmell v. Texas*, 529 US 513, 120 S Ct 1620, 146 L Ed 2d 577 (2000), and petitioner presents no reasoned argument as to why *Carmell* is pertinent here.[13] Given the conclusory nature of petitioner's federal *ex post facto* challenge, we reject that challenge without further discussion.

■ We next reject petitioner's double jeopardy and cruel and unusual punishment challenges for the reasons stated in *Hibbard v. Board of Parole*, 144 Or App 82, 88, 925 P2d 910 (1996), *vacated* 327 Or 594, 965 P2d 1022 (1998). In *Hibbard*, we noted that virtually identical challenges to the constitutionality of the predatory sex offender laws depended on the premise that the predatory sex offender designation involved "punishment," and that, if the law did not involve "punishment" for purposes of *ex post facto* analysis, it likewise did not involve "punishment" for purposes of state and federal double jeopardy and cruel and unusual punishment analyses. 144 Or App at 88. Given that petitioner here does not make any arguments that "punishment" for purpose of double jeopardy

---

[13] *Carmell* did not address any issue concerning allegedly "increased punishment," as is the issue here. Rather, it concerned retroactive application of a law that altered the rules of evidence, making it easier to obtain a conviction.

or cruel and unusual punishment analysis differs from "punishment" for purposes of *ex post facto* analysis, we readopt and adhere to our reasoning and conclusion in *Hibbard.*

■      Finally, we turn to petitioner's due process arguments. Petitioner relies on the Oregon Supreme Court's decision in *Noble* for the proposition that he was entitled to an in-person evidentiary hearing concerning his predatory sex offender designation. *See Noble,* 327 Or at 498 (due process requires "notice and an evidentiary hearing when the Board proposes to designate a person as a predatory sex offender pursuant to ORS 181.585"). The state responds that this case is, in fact, distinguishable from *Noble,* both because petitioner here was given an opportunity to file written objections to the designation, and because petitioner's circumstances differ somewhat from the circumstances of the petitioner in *Noble.*

We do not reach, or address, the merits of petitioner's abstract argument that, under *Noble,* every person subject to imposition of a predatory offender designation is entitled, upon demand, to a *Morrissey*-type hearing, regardless of the ostensible basis of the putative designation. That is so because, on this record, it is indisputable that, given the nature of petitioner's challenge to his designation, affording him the process he urges could not possibly have affected his designation.

The denial of an in-person evidentiary hearing was, at worst, harmless and, thus, no meaningful relief could flow from deciding the merits of petitioner's due process arguments. As noted, the Board's imposition of the predatory offender designation rested on two alternative and independently sufficient bases. One of those bases was that petitioner's conduct satisfied the requisites of the "men who molest boys (multiple male victims)" automatic override factor. The record further discloses that, although the Board afforded petitioner an opportunity to raise factual issues related to the use of the various factors endorsed on the risk assessment scale—and petitioner took advantage of that opportunity to argue that no factual basis supported the use of some of the factors—petitioner did *not* challenge the factual basis for the use of that automatic override factor.

Given that petitioner did not challenge the basis for the Board's application of the automatic override factor despite being given the opportunity to do so, and given that he makes no argument on appeal that the Board's reliance on that factor constituted substantive legal error, we conclude that a remand to the Board would be a meaningless exercise in this case. In sum, even if the process afforded to petitioner somehow fell short of what the Due Process Clause requires, it made no difference to the ultimate outcome because the Board necessarily would have designated petitioner a predatory sex offender in any event based on the automatic override factor.

Affirmed.