Argued and submitted January 10, 2002; resubmitted en banc May 5, affirmed July 16, 2003

## V. L. Y.,
*Petitioner,*

*v.*

## BOARD OF PAROLE AND POST-PRISON SUPERVISION,
*Respondent.*

### A108068

72 P3d 993

Gail L. Meyer argued the cause and filed the brief for petitioner.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler and Brewer, Judges.

KISTLER, J.

Edmonds, J., dissenting.

Armstrong, J., dissenting.

**KISTLER, J.**

Petitioner appeals from an order of the Board of Parole and Post-Prison Supervision (board) designating him as a predatory sex offender. He argues that the board's order violates various provisions of the state and federal constitutions. We affirm.

Before turning to the facts of this case, we describe briefly the applicable statutory and regulatory background. ORS 181.585(1) provides that a person who has been convicted of a limited class of sex offenses[1] will be designated as a "predatory sex offender" if he or she "exhibits characteristics showing a tendency to victimize or injure others * * *."[2] ORS 181.586(1) entrusts the determination whether a person is a predatory sex offender to the board for persons on parole and post-prison supervision and to the Department of Corrections (department) and community corrections agencies for persons on probation. Finally, ORS 181.585(2) directs those agencies to use a "sex offender risk assessment scale approved by the Department of Corrections" in determining whether a person should be designated as a predatory sex offender.

The legislature thus provided a general definition of the term "predatory sex offender" and delegated to the department and the board the authority, if not the obligation, to identify the substantive characteristics that will determine whether a person meets that definition. The legislature, however, did not specify the procedures that the board should follow in deciding who should be designated as a predatory sex offender, and those procedures have varied over time.

Initially, the board took the position that it could designate persons on parole or post-prison supervision as

---

[1] The class consists of persons who have been convicted of rape, sodomy, unlawful sexual penetration, and sexual abuse. ORS 181.585(1); ORS 181.594(2)(a) - (d). It also includes persons who have been convicted of attempting to commit those crimes or found guilty except for insanity of one of those crimes. ORS 181.585(1); ORS 181.594(2)(a) - (d).

[2] The complete text of the relevant statutes is set out in an Appendix to this opinion.

predatory sex offenders without holding a hearing or providing any opportunity for a response. According to the then-applicable rules, before a person was released on parole or post-prison supervision, a counselor would use a risk assessment scale to evaluate whether a person should be designated as a predatory sex offender. *See former* OAR 291-28-030(2)(a)(A) (1996). That evaluation, which could be based on an inmate's file, police reports, and confidential communications among agency officials,[3] would be forwarded to the board as part of the release planning packet. Based on that evaluation, the board would make registration as a predatory sex offender a condition of parole or post-prison supervision. *See id.*

In *Noble v. Board of Parole*, 327 Or 485, 498, 964 P2d 990 (1998), the Oregon Supreme Court held that those procedures did not provide an offender with due process. Weighing the individual's interest, the risk of an erroneous decision under the board's existing procedures, and the burden on the agency to provide additional predesignation procedures, the court concluded:

> "[D]ue process requires notice and an evidentiary hearing when the Board proposes to designate a person as a predatory sex offender pursuant to ORS 181.585. Moreover, the hearing must occur *before* the designation decision is made. * * * Here, as the statute is written and as it has been applied by the Board and supervising agencies, the deprivation at issue, *i.e.*, community notification, can follow so close on the heels of a designation decision that a post-decisional hearing would occur too late to comport with due process."

*Id.* at 498 (emphasis in original).

After *Noble*, the board issued new rules.[4] *See* OAR 255-060-0011. Under those rules, the amount of process that the board provides varies depending on which risk assessment factors apply in a given case. *See id.* The department's

---

[3] *See Noble v. Board of Parole*, 327 Or 485, 489, 964 P2d 990 (1998).

[4] The board initially issued a policy statement, which had the effect of a rule. *See Burke v. Children's Services Division*, 288 Or 533, 607 P2d 141(1980). Although the policy statement applies to this case, we cite the rules because they are substantially the same as its policy statement.

risk assessment scale lists a series of factors that increase or decrease the risk that a convicted sex offender will reoffend. Not all the factors are weighted equally, however. Some factors are designated as "automatic override" factors,[5] others are referred to as "starred" factors,[6] and the remainder are designated as neither automatic override nor starred factors. Procedurally, if the board makes a preliminary determination that one automatic override factor or three starred factors apply, the board will notify the offender of its preliminary determination and give him or her an opportunity to explain in writing why those factors do not apply. It will not, however, provide the offender with any further hearing beyond that. If, after considering the offender's written objections, the board finds that either one automatic override factor or three starred factors apply, then its rules provide that the person will be designated as a predatory sex offender. OAR 255-060-0011(3).

If no automatic override or fewer than three starred factors apply, the board will consider all the positive and negative factors that apply, give each a preassigned weight, and determine whether a convicted sex offender's total score on all the applicable factors results in a preliminary designation as a predatory sex offender.[7] OAR 255-060-0011(3). If it does, the board will make available to the offender "a Morrissey-type hearing prior to the Board making a predatory sex offender finding." OAR 255-060-0011(6)(a). Stated differently, if no automatic override or fewer than three starred factors apply, the board will provide the offender with an opportunity to present live testimony and cross-examine witnesses concerning all the applicable factors on the risk assessment scale before deciding whether that person's total score on the risk assessment scale will result in a designation as a predatory sex offender.

---

[5] Override factors are a prior forcible rape, use of a weapon during commission of the offense, and men who molest boys.

[6] The starred factors that existed at the time of petitioner's designation included a history of sex offense convictions, the offender was a stranger to the victim, use of weapons or threats, predatory behavior, and prior nonsexual criminal history.

[7] According to the board's rules, a negative 50 score (a score in which the negative factors outweigh the positive factors by 50 points or more) may result in a designation as a predatory sex offender. OAR 255-060-0011(3), (6)(b).

In this case, petitioner was convicted in 1991 of first-degree rape and first-degree sodomy. In 1999, the board made a preliminary determination that one automatic override factor applied—a prior conviction for forcible rape.[8] It also determined that three starred factors applied—a history of sex offense convictions, the use of weapons or threats, and a prior nonsexual criminal history. The board provided petitioner's counsel with, among other things, its preliminary determination, notice of the specific factual basis for that determination,[9] a copy of the board's policies and procedures, a notice of rights, and a copy of petitioner's presentence investigation report.

Petitioner, through his counsel, filed a lengthy objection to the board's preliminary determination. Most of the objections were constitutional. One objection was factual and was directed at the automatic override factor. Petitioner explained that he had not been convicted of forcible rape. Rather, he had been convicted of statutory rape. He also objected to two of the starred factors on legal grounds. Regarding a "history of sex offense convictions," petitioner did not dispute that, before his 1991 conviction for rape and sodomy, he had been convicted of first-degree rape and first-degree sodomy in January 1989 and of first-degree sex abuse and second-degree sex abuse in June 1989. He argued, however, that, because all of his rape, sodomy, and sex-abuse convictions involved the same victim, they should be regarded as a continuing offense rather than as separate prior convictions.[10] Regarding the second starred factor, a "prior nonsexual criminal history," petitioner did not dispute the factual basis for that starred factor—that he had been arrested

---

[8] The board previously had calculated petitioner's score on the risk assessment scale in 1996.

[9] Regarding the history of sex offense convictions, the board provided petitioner with a list of the specific convictions on which it based its preliminary determination. Regarding the use of weapons or threats, the board provided petitioner with the specific threats that he allegedly had made. Finally, regarding the prior nonsexual criminal history, the board explained that petitioner had been placed on diversion for driving under the influence of intoxicants on November 30, 1988, and had successfully completed diversion.

[10] Petitioner made a second, subsidiary argument. He did not dispute that the acts that gave rise to the four 1989 convictions preceded the acts that gave rise to the 1991 conviction. He also did not dispute that the 1989 convictions preceded the

for driving under the influence of intoxicants (DUII) in November 1988. He argued, however, that this factor did not apply to him because he had successfully completed diversion.

After receiving petitioner's objections, the board agreed with petitioner that the automatic override factor did not apply; that is, it agreed that the evidence did not show that he had a prior conviction for forcible rape. It adhered, however, to its conclusion that three starred factors applied. It rejected petitioner's arguments that his four 1989 convictions should not be regarded as "prior convictions" within the meaning of the risk assessment scale. It also found that "the prior non-sexual criminal history category applies because [petitioner] had a DUII arrest that resulted in a diversion. The definitions for the sex offender risk assessment scale specifically state that diversions are to be included in this category." Finally, the board noted that petitioner had not challenged its conclusion that the third starred factor—the use of weapons or threats—applied. Having considered petitioner's objections and having found that three starred factors applied, the board designated petitioner as a predatory sex offender.

On review, petitioner argues primarily that his due process right to a "full testimonial hearing" entitles him either to challenge or supplement the board's use of the department's risk assessment scale. As we understand his argument, he contends that, under the procedural component of the Due Process Clause, he was entitled to a hearing to prove either that the risk assessment scale is "not a valid, scientific test" or that, despite the criteria set out in the board's rules, he is not likely to reoffend. He also raises a variety of other state and federal constitutional challenges to the board's order. Before turning to defendant's constitutional arguments, we first consider the dissents' subconstitutional rationale. The dissents would hold, as a matter of statute, that the board may not rely exclusively on the department's risk assessment scale to determine whether

---

1991 conviction. He argued, however, that, because the 1989 convictions occurred after the acts that gave rise to the 1991 conviction, the 1989 convictions could not be regarded as "prior convictions" for the purposes of the risk assessment scale.

petitioner should be classified as a predatory sex offender. In the dissents' view, ORS 181.585(1) requires that petitioner be given the opportunity to introduce evidence that, notwithstanding the criteria in the department's risk assessment scale, he is not currently dangerous.

In analyzing that issue, we begin with text and context of ORS 181.585. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). ORS 181.585 provides:

> "(1)   For purposes of ORS 181.585 to 181.587, a person is a predatory sex offender if the person exhibits characteristics showing a tendency to victimize or injure others and has been convicted of a sex crime listed in ORS 181.594(2)(a) to (d), has been convicted of attempting to commit one of those crimes or has been found guilty except for insanity of one of those crimes.

> "(2)   In determining whether a person is a predatory sex offender, an agency shall use a risk assessment scale approved by the Department of Corrections or a community corrections agency."

ORS 181.585(1) thus sets out two conditions that must be met before a person may be designated as a predatory sex offender: (1) the person must have been convicted of one of the four crimes—rape, sodomy, unlawful sexual penetration, or sexual abuse—listed in ORS 181.594(2)(a) to (d); and (2) the person must "exhibi[t] characteristics showing a tendency to victimize or injure others."

The first condition in ORS 181.585(1) defines the class of persons who are eligible to be designated as predatory sex offenders: Only those persons who have been convicted of one of the four specified sexual offenses may be designated as a predatory sex offender. Within that class, however, the legislature has left it to the board and the department to identify the subclass of persons who "exhibi[t] characteristics showing a tendency to victimize others." Beyond determining the class of persons eligible to be designated as predatory sex offenders, the textual reference to past convictions has no bearing on the factors that the department or the board should consider in deciding who should be included within the subclass.

The second condition defines which convicted sex offenders should be designated as predatory sex offenders—those persons who "exhibi[t] characteristics showing a tendency to victimize others." The legislature's use of the present tense verb "exhibits" implies that an offender must presently exhibit certain characteristics, but that verb does not identify which characteristics the offender must exhibit. Rather, the participial phrase that follows and modifies "characteristics"—*i.e.*, "characteristics showing a tendency to victimize others"—performs that function. The participial phrase is broad. Nothing in the phrase "showing a tendency to victimize others" requires proof that a person is currently dangerous. Rather, the phrase is broad enough to include persons whose past conduct provides reason to believe that they may be dangerous in the future. The board, for example, reasonably could conclude that an offender with a history of multiple convictions for sexual assault "exhibits characteristics showing a tendency to victimize others."

One final portion of ORS 181.585 bears on the textual analysis. ORS 181.585(2) directs the board to use a "sex offender risk assessment scale" approved by the department to determine which convicted sex offenders should be designated as predatory sex offenders. ORS 181.585(2). Implicit, if not explicit, in the direction to use a sex offender risk assessment scale approved by the department is a delegation of legislative authority to the department to develop a scale that identifies those characteristics or combination of characteristics that "show a tendency to victimize or injure others." Nothing in the text of ORS 181.585(1) precludes the department or the board, in carrying out that legislative mandate, from relying solely on an offender's previous convictions to determine his or her present risk of reoffending.

The dissents advance an alternative interpretation of the statute's text.[11] They observe that the phrase "exhibits characteristics showing a tendency to victimize or injure others" focuses on a person's present tendencies, while the question whether a person "has been convicted of a sex crime

---

[11] Because Judge Armstrong's dissenting opinion echoes Judge Edmonds' dissent, we refer primarily to Judge Edmonds' dissent.

listed in ORS 181.594(2)(a) to (d)" focuses on the person's history. *See* 188 Or App at 639 (Edmonds, J., dissenting). It follows, the dissents reason, that the text of ORS 181.585 unambiguously establishes that neither the department nor the board may rely on a person's criminal history to determine whether he or she presently exhibits characteristics showing a tendency to victimize or injure others. *See id.*

The dissents' textual interpretation is problematic for at least three reasons. First, the fact that the question whether a person "has been convicted of a sex crime listed in ORS 181.594(2)(a) to (d)" focuses on the past does not mean that a person's entire criminal history is relevant only to that consideration, as the dissents' analysis appears to assume. Second, and conversely, an offender's criminal history is logically and textually relevant to whether he or she "exhibits characteristics showing a tendency to victimize or injure others." The fact that a person has a history of criminal behavior bears on whether he or she has a present tendency to victimize or injure others. Finally, the dissents unnecessarily discount the delegation of legislative authority to the department in ORS 181.585(2) to identify, in the first instance, those characteristics or combinations of characteristics that will define when a person shows a tendency to victimize or injure others. The delegation is broad enough to permit the department to develop a risk assessment scale that relies, as the department's scale does, on an offender's criminal history to make a present prediction about the offender's future risk.[12]

---

[12] Judge Armstrong concludes, based on a single sentence from *Noble*, that the Supreme Court has already resolved this issue. *See* 188 Or App at 648 (Armstrong, J., dissenting). The dissent reads too much into that sentence. The statutory question presented by this case was not presented in *Noble*, and the court did not purport to decide it. The question presented here is what, as a matter of statute, is the substantive standard that the board should employ in deciding whether a person is a predatory sex offender. The question in *Noble* was whether the Due Process Clause requires, as a matter of procedure, that the board provide a hearing to the petitioner before designating him as a predatory sex offender. Those are two separate questions, as the Court recently reaffirmed in *Connecticut Department of Public Safety v. Doe*, 538 US _____ , 123 S Ct 1160, 155 L Ed 2d 98 (2003). We should hesitate to assume that our Supreme Court intended to resolve an issue in *Noble* that was neither briefed nor presented in that case. Moreover, the court hardly could have decided in *Noble* whether the board's rules exceeded its statutory authority. When the court issued its decision in *Noble*, the board had not promulgated the rules that are at issue here.

Although the dissents' interpretation seems at odds with the text, we cannot say that it is implausible or completely foreclosed by the text. We note, however, that the context cuts against the dissents' textual interpretation. The legislature has not chosen to permit a person who has been designated as a predatory sex offender to prove that the designation should be removed because he or she is no longer currently dangerous. *See* ORS 181.588; ORS 181.600(1)(a)(C). It is difficult to see why a finding that a person is currently dangerous is a necessary predicate to the decision to designate a person as a predatory sex offender but irrelevant to the question whether the designation, once made, should continue. Perhaps the legislature intended to draw an arbitrary distinction between making the designation and continuing it. But the better conclusion to be drawn from the context is that proof that a person is currently dangerous is not a necessary prerequisite to determining that he or she continues to present the sort of risk that requires community notification. The text, considered in context, does not resolve the inquiry, however, and we turn to the legislative history.

The legislative history confirms that the legislature intended to give broad discretion to the department to determine by rule which offenders exhibited characteristics showing a tendency to victimize or injure others. It did not intend to limit that delegation of authority in the way that the dissents would. The bill that became ORS 181.585 originated in the House. As initially drafted, it required automatic community notification for every person released on probation or parole who had been sentenced as a dangerous offender under ORS 161.725 or who was required to register as a sex offender. HB 2759 (1993), Draft Bill (Dec 13, 1992). During the hearings before the House Subcommittee on Crime and Corrections, two propositions emerged. First, it became clear that identifying and personally notifying every person in a sex offender's neighborhood, once he or she was released on parole or probation, could prove to be a daunting and costly task. Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2759, Apr 28, 1993, Tape 91, Side A (statements of Rep Robert Tiernan and

Committee Counsel Holly Robinson). Second, the subcommittee learned that the corrections departments in two counties had been involved in a pilot notification project that used a "risk assessment scale" to identify those probationers for whom notification was appropriate.[13] Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2759, Mar 31, 1993, Tape 63, Side A (testimony of Cindy Hanners and Faye Fagel).

To limit the costs of notification, the subcommittee considered relying on the risk assessment scale to narrow the class of offenders whose release would trigger notification. Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2759, Apr 29, 1993, Tape 92, Side A (statement of Rep Robert Tiernan; testimony of Joanne Fuller; statement of Committee Counsel Holly Robinson). Over the course of several hearings, the subcommittee considered a series of amendments that incorporated verbatim some of the factors set out in the department's risk assessment scale. Some amendments required mandatory notification if the "automatic override" or "starred" factors were present. HB 2759 (1993), -1 amendments (Apr 13, 1993); -3 amendments (Apr 26, 1993). Other amendments, to give the implementing agencies flexibility both to refine their analysis and to limit the costs of notification, declined to incorporate the risk assessment scale verbatim but provided that "[t]o determine the offender's potential risk, the parole and probation officer shall use a risk assessment scale approved by the Department of Corrections." HB 2759 (1993), -4 amendments (May 6, 1993).

As the bill ultimately passed out of the House, it authorized notification only for persons who had been convicted of certain specified sex offenses. Within that class of offenders, it provided for automatic notification for all those persons who had a "history of predatory behavior." HB 2759 (1993), A-Engrossed (May 24, 1993), § 2(1). If a person did not have a "history of predatory behavior," the bill provided that "the parole and probation office supervising the offender

---

[13] The scale appears to have been developed to determine the appropriate level of supervision for sex offenders released on probation, but the corrections officers used it to determine which offenders were suitable for community notification.

shall determine the potential risk that the offender poses to the community in order to decide whether notification of the community is necessary." HB 2759 (1993), A-Engrossed (May 24, 1993), § 3. Finally, the bill directed that, in "determin[ing an] offender's potential risk, the parole and probation officer shall use a sex offender risk assessment scale approved by the Department of Corrections." *Id.* The House did not require proof that a person was currently dangerous as a pre-requisite to notification. Rather, it made notification auto-matic if a person had a history of predatory behavior, or dis-cretionary, based on the application of department's risk assessment scale.

The Senate Judiciary Committee took a similar but slightly different approach to determining those persons for whom notification was appropriate. As the House had, the Senate provided that only those persons who had been con-victed of specified sexual offenses were eligible for notifica-tion. The Senate, however, did not divide that class into two groups—one that required mandatory notification and another for whom notification was discretionary. Rather, within the class of convicted sex offenders, the Senate pro-vided for notification for those persons who "exhibi[t] char-acteristics showing a tendency to victimize others"—the standard that is now codified in ORS 181.585(1). *See* Senate Amendments to A-Engrossed House Bill, HB 2759, July 19, 1993, § 1(1). The senate amendments also provided, much as ORS 181.585(2) now provides, that, "[i]n determining whether a person is a predatory sex offender, an agency may use a sex offender risk assessment scale approved by the Department of Corrections." Senate Amendments to A-Engrossed House Bill, HB 2759, July 19, 1993, § 1(2).

A subcommittee of the Senate Judiciary Committee developed the standard that is now codified in ORS 181.585(1) over a nine-day period between June 23 and July 2, 1993. There is no record of the subcommittee's work, and the only explanation of the language "exhibits character-istics showing a tendency to victimize others" comes from Senator Shoemaker's statements to the Senate Judiciary Committee when he explained the draft amendments on July 2. He told the committee that, rather than have a blanket rule about who would be subject to the notice, as the House

had done, "we would require that a parole or probation department or board, or the psychiatric review board, make a determination that the person presents a risk to the public." Tape Recording, Senate Judiciary Committee, HB 2759, July 2, 1993, Tape 207, Side B (statement of Sen Robert Shoemaker). Nothing in Senator Shoemaker's explanation precludes the department from looking solely to historical criteria to determine an offender's present risk of reoffending in the future.

After Senator Shoemaker's comments on July 2, there was no further discussion of the standard. However, in deciding a different issue—who should make the determination whether a person is a predatory sex offender—the committee's discussions touched tangentially on the issue presented here. Senator Webber stated that "there needs to be a policy decision whether the decision should be made by a judge or by rule within the Department of Corrections." Tape Recording, Senate Judiciary Committee, HB 2759, July 7, 1993, Tape 210, Side B (statement of Sen Catherine Webber). In response, Senator Shoemaker expressed his belief it "should be an individual determination. Should be very specific to the person and should be done by the Board of Parole or the court." Tape Recording, Senate Judiciary Committee, HB 2759, July 7, 1993, Tape 210, Side B (statement of Sen Robert Shoemaker). Senator Webber later agreed that the determination could be made by the Department of Corrections, and that language was added to section (2) of the amended bill. Tape Recording, Senate Judiciary Committee, HB 2759, July 12, 1993, Tape 217, Side B (statement of Sen Catherine Webber); HB 2759 (1993), B-Engrossed (July 19, 1993), § 2. Webber thus appeared to agree that the department could adopt rules to determine which sex offenders exhibited characteristics showing a tendency to victimize others, and her comments implicitly reaffirm the department's discretion to identify, by rule, those characteristics or combinations of characteristics that will demonstrate a sufficient risk to require notification.[14]

---

[14] At a July 12 Senate Judiciary Committee work session, Danny Santos, the chair of the parole board, and Joanne Fuller, the spokesperson for the Department of Corrections, explained that their agencies would be willing to make the determination whether a person was a predatory sex offender. Tape Recording, Senate

After the Senate passed out its version of the bill, the House refused to concur in the Senate amendments, and a conference committee was appointed to resolve the differences between the two bills. The understanding on which the Joint Conference Committee resolved those differences provides the controlling legislative history. *Owens v. Maass,* 323 Or 430, 444-45, 918 P2d 808 (1996) (treating conference committee legislative history as final indication of legislative intent); *State v. Beason,* 170 Or App 414, 431-32, 12 P3d 560 (2000), *rev den,* 331 Or 692 (2001) (same).

Legislative counsel began the conference committee hearing by identifying two differences between the House and the Senate bills that required resolution. Counsel explained that the House version "requires community notification of those sex offenders who have a prior sex offense criminal history and a history of predatory behavior." Tape Recording, Conference Committee, HB 2759, July 28, 1993, Tape 1, Side A (statement of Holly Robinson, Committee Counsel). She explained that the Senate version, on the other hand, "establishes guidelines for the Board of Parole or Department of Corrections to follow when making a determination that a person under their supervision is a predatory sex offender." *Id.* She said that the committee had agreed to the Senate version and started to turn to the second difference that divided the two chambers. *Id.*

At that point, Representative Parks, the chair of the conference committee, interjected to explain the basis on which the two chambers had agreed to the Senate's language. He said, "Before we go to that, if I understand, what we had in the [House] bill as mandatory now becomes guidelines, in other words discretionary." Tape Recording, Conference Committee, HB 2759, July 28, 1993, Tape 1, Side A (statement of Rep Del Parks). Legislative counsel confirmed that understanding. She said:

---

Judiciary Committee, HB 2759, July 12, 1993, Tape 217, Side B (testimony of Danny Santos and Joanne Fuller). Both Santos and Fuller told the Senate Judiciary Committee that they would hold hearings before determining whether a person was a predatory sex offender. *Id.* The procedural question, however, of whether the board would hold hearings before determining whether a person was a predatory sex offender says nothing about the substantive terms on which the department and the board may rely in making that determination. The two concepts are logically distinct.

"The criteria are the same in that the House version talked about predatory behavior. The Senate attempted to define it a little bit further than the House version had but, rather than having mandatory notification, it really sets up a scheme by which if an agency wants to do so then there will basically be some guidelines to follow—some rules to follow.

"I think that the other piece that it does is that by establishing statutory guidelines in this way if notification is done, the PO's [probation or parole officers] in Clackamas County will be having the same conversation that the POs in Marion County will have."

Tape Recording, Conference Committee, HB 2759, July 28, 1993, Tape 1, Side A (statement of Holly Robinson, Committee Counsel).

Representative Parks' statement makes clear that the Conference Committee agreed to the Senate version on the understanding that the department had discretion to provide by rule the same type of standards that the House had mandated; that is, the department and the board could provide for designation as a predatory sex offender based solely on "a history of predatory behavior," as the bill provided when it emerged from the House. Legislative counsel's explanation reinforces that understanding. She added that the Senate bill was not intended to limit the agency's discretion. Rather, it merely "attempt[s] to define [the concept of predatory behavior] a little bit further than the House version had." The "rea[l]" benefit of the statute, as counsel explained it, is that it "sets up a scheme by which if an agency wants to do so then there will be guidelines to follow—some *rules* to follow." Nothing in this interchange suggests that the Joint Conference Committee understood that proof that a person was currently dangerous was a necessary prerequisite to designating that person as a predatory sex offender. Rather, the discussion in the conference committee makes clear that the statute gives the department and the board discretion to determine the risk that an offender poses solely by looking to his or her past behavior.

Taking the legislative history of ORS 181.585 together with the text and context of the statute, we hold that

the legislature intended to give the board and the department the ability to determine by rule the characteristics, such as those developed in the risk assessment scale, that show a tendency to victimize or injure others. *Noble* requires that the board provide petitioner with notice of his preliminary designation as a predatory sex offender and provide him an opportunity to challenge evidence used by the board to make the designation. But petitioner's challenge is confined, by statute, to the evidentiary findings made by the board on the risk assessment scale because that scale is the tool the board uses to determine whether an offender "show[s] a tendency to victimize or injure others." *See* ORS 181.585(1); ORS 181.585(2).

■        We now turn to petitioner's various constitutional arguments.[15] Relying on the procedural component of the Due Process Clause of the Fourteenth Amendment, petitioner argues that the board erred in two respects—the first substantive and the second procedural. Petitioner argues initially that his procedural due process right to a "full testimonial hearing" precludes the board (or the legislature for that matter) from relying exclusively on the factors set out in the risk assessment scale to determine whether he is a predatory sex offender. Put another way, in petitioner's view, procedural due process requires the board to employ a specific substantive standard; it may not rely solely on his past behavior, as portions of the risk assessment scale do, to decide whether he is a predatory sex offender.

The Court's decision in *Connecticut Department of Public Safety v. Doe*, 538 US ____ , 123 S Ct 1160, 155 L Ed 2d 98 (2003), provides the short answer to petitioner's first argument. The Court reasoned:

"In cases such as *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), and *Goss v. Lopez*, 419 U.S. 565 (1975), we held that due process required the government to accord the plaintiff a hearing to prove or disprove a particular fact or set of facts. But in each of these cases, the fact in question was concededly relevant to the inquiry at hand. Here, however, the fact that respondent seeks to prove—that he is not

---

[15] We discuss petitioner's constitutional arguments in the order in which he makes them.

currently dangerous—is of no consequence under Connecticut's Megan's Law. As the DPS Website explains, the law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest. Indeed, the disclaimer on the Website explicitly states that respondent's alleged nondangerousness simply does not matter.

"In short, even if respondent could prove that he is not likely to be currently dangerous, Connecticut has decided that the registry information of *all* sex offenders—currently dangerous or not—must be publicly disclosed. Unless respondent can show that that *substantive* rule of law is defective (by conflicting with a provision of the Constitution), any hearing on current dangerousness is a bootless exercise. * * * [The s]tates are not barred by principles of *'procedural* due process' from drawing such classifications."

123 S Ct at 1164-65 (emphasis in original; citations omitted). The Court thus recognized that state law determines the substantive criteria that must be satisfied before a person may be publicly designated as a sex offender. The procedural component of the Due Process Clause has no bearing on that issue, contrary to petitioner's primary constitutional argument.

■    Petitioner raises a second due process issue. He argues that, even if the board's substantive rules are constitutionally valid, the procedures that the board employed in this case were constitutionally deficient. Before we turn to that question, it is helpful to restate the procedures the board provided petitioner. As noted, the board made a preliminary determination that petitioner was a predatory sex offender because one automatic override factor and three starred factors applied. After making that determination, the board provided petitioner's counsel with a copy of the risk assessment scale, the factual basis for its conclusion that the four factors applied, a copy of the board's policies and procedures, a notice of rights, a copy of the definitions for the risk assessment scale, and a copy of petitioner's PSI report. The board also provided petitioner with an opportunity to file a written objection to its preliminary determination but did not provide him with an opportunity to call witnesses to testify.

As noted, petitioner filed a lengthy objection to the board's determination. In that objection, he did not dispute any of the historical facts that formed the basis for the board's preliminary determination that three starred factors applied.[16] Rather, he accepted those historical facts but argued that different legal consequences should follow from them. Because the only relevant issues that petitioner raised were legal, there was no need for an evidentiary hearing in which witnesses would testify and be cross-examined. Put another way, even if due process ordinarily would entitle petitioner to a testimonial hearing before the board decided whether to designate him as a predatory sex offender, *see Koskela v. Willamette Industries, Inc.*, 331 Or 362, 378-81, 15 P3d 548 (2000), the failure to provide such a hearing in this case was harmless error, *see Meadows v. Board of Parole*, 181 Or App 565, 579, 47 P3d 506 (2002), *rev den*, 335 Or 355 (2003).[17]

■     Petitioner next argues that the board's order violates Article I, section 20, of the Oregon Constitution.[18] He contends that the factors used in the department's risk assessment scale are not "permissible criteria" for distinguishing among persons because they "lac[k] scientific validity" and are contradicted by "countervailing expert evidence." As we explained, however, in *Gunn v. Lane County*, 173 Or App 97, 102, 20 P3d 247 (2001), *rev den*, 334 Or 631 (2002),

"Article I, section 20, protects only 'true classes' from disparate treatment. *State ex rel. Huddleston v. Sawyer*, 324

---

[16] Petitioner did dispute the factual basis for saying that the automatic override factor applied, and the board agreed with his objection on that point.

[17] Petitioner also argues that due process requires proof by clear and convincing evidence. The state responds that proof by a preponderance of the evidence is all that is required. We need not resolve that issue to decide this case. When, as in this case, the relevant historical facts are undisputed, the level of certainty necessary to resolve a factual dispute is irrelevant. Petitioner also argues that, whatever level of certainty is constitutionally required, the evidence in this case was insufficient to meet it. Petitioner's argument rests on the premise that the board may not rely solely on the criteria set out in the department's risk assessment scale to decide whether he should be designated as a predatory sex offender. Because the premise of petitioner's argument fails, so does his claim that the evidence is insufficient.

[18] Article I, section 20, of the Oregon Constitution provides: "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Or 597, 610, 932 P2d 1145, *cert den*, 522 US 994 (1997); *Tanner v. OHSU*, 157 Or App 502, 520, 971 P2d 435 (1998). A true class is one that is not created by the challenged statute itself and is defined in terms of characteristics independent of the challenged statute. *Tanner*, 157 Or App at 520."

Petitioner's argument is not based on a claim that the risk assessment scale impermissibly distinguishes on the basis of a true class. Rather, petitioner seeks to use Article I, section 20, to mount what is in effect a substantive due process challenge to the wisdom of the board's risk assessment scale. That is not a cognizable Article I, section 20, claim.

Petitioner also argues that the board's order violates the *ex post facto* provisions of the state and federal constitutions, violates the double jeopardy protections of those constitutions, and also constitutes cruel and unusual punishment in violation of both constitutions. All those arguments are answered completely by our decision in *Meadows*. *See* 181 Or App at 571-79; *cf. State v. MacNab*, 334 Or 469, 482-83, 51 P3d 1249 (2002) (holding that requiring convicted sex offenders to register did not violate the state or federal prohibitions against *ex post facto* laws). We also note that the United States Supreme Court recently rejected a federal *ex post facto* challenge in *Smith v. Doe*, ___ US ___ , 123 S Ct 1140, 155 L Ed 2d 164 (2003), to an Alaska statute similar to Oregon's.[19] The Court's reasoning in *Smith* confirms our analysis of the federal constitutional claim in *Meadows*.

■■ Petitioner raises two constitutional challenges that we did not address in *Meadows*. He argues first that ORS 181.585 is a bill of attainder. *See* US Const, Art I, § 10. The prohibition against bills of attainder prevents the legislature "from singling out disfavored persons and meting out summary punishment for past conduct." *Landgraf v. USI Film Products*, 511 US 244, 266, 114 S Ct 1483, 128 L Ed 2d 229 (1994); *see United States v. Brown*, 381 US 437, 445, 85 S Ct 1707, 14 L Ed 2d 484 (1965). The prohibition, however, does not apply to laws that classify generally as opposed to those that single out specific persons. *Nixon v. Administrator of*

___

[19] The Alaska statute that the Court upheld in *Smith* is essentially identical to the Oregon statute.

*General Services*, 433 US 425, 471-72, 97 S Ct 2777, 53 L Ed 2d 867 (1977). The law that petitioner challenges here—ORS 181.585—is not directed at specific persons. It is directed instead at an open-ended class—those persons who have been convicted of specific sexual offenses and who exhibit characteristics showing a tendency to victimize or injure others. ORS 181.585(1). As such, ORS 181.585 is not a bill of attainder. *Nixon*, 433 US at 471-72.

■       Finally, petitioner argues that the predatory sexual offender notification law violates his federal privacy rights. We have held that the federal constitutional right to privacy is limited to those situations where government seeks to direct an individual's unilateral personal decisions on issues such as abortion and contraception. *Does 1-7 v. State of Oregon*, 164 Or App 543, 565, 993 P2d 822 (1999), *rev den*, 330 Or 138 (2000). In reaching that conclusion, we determined that providing information about decisions that cannot be made unilaterally by the individual, such as the adoption of a child, implicate no privacy right. *Id.* at 565-66. Here, the state, not petitioner, made the decision to label him a predatory sexual offender. As a result, there is no federal privacy right implicated in disseminating that information to the public.[20]

In summary, we hold that ORS 181.585 permitted the board to rely exclusively on the criteria in the department's risk assessment scale to determine whether he was a predatory sex offender, that the procedural component of the Due Process Clause does not require that petitioner be permitted to impeach the risk assessment scale, that any error in not providing petitioner an evidentiary hearing was harmless on this record, and that petitioner's various constitutional challenges to designating him as a predatory sex offender fail.

Affirmed.

---

[20] Petitioner also argues, without explanation, that the board's order violates his right to privacy under the state constitution. He does not provide any basis for saying that the right, if it exists, is any broader than the federal right that we recognized in *Roe*, and we decline to address his state constitutional argument. *See State v. Montez*, 309 Or 564, 604, 789 P2d 1352 (1990) (declining to address Guarantee Clause argument that was not adequately briefed).

## APPENDIX

### ORS 181.585

"(1)   For purposes of ORS 181.585 to 181.587, a person is a predatory sex offender if the person exhibits characteristics showing a tendency to victimize or injure others and has been convicted of a sex crime listed in ORS 181.594(2)(a) to (d), has been convicted of attempting to commit one of those crimes or has been found guilty except for insanity of one of those crimes.

"(2)   In determining whether a person is a predatory sex offender, an agency shall use a sex offender risk assessment scale approved by the Department of Corrections or a community corrections agency."

### ORS 181.586

"(1)(a)   If the State Board of Parole and Post-Prison Supervision for a person on parole or post-prison supervision or the Department of Corrections or a community corrections agency for a person on probation makes a determination that the person under its supervision is a predatory sex offender, the agency supervising the person shall notify anyone whom the agency determines is appropriate that the person is a predatory sex offender.

"(b)   When a predatory sex offender has been subsequently convicted of another crime and is on supervision for that crime, the agency supervising the person may notify anyone whom the agency determines is appropriate that the person is a predatory sex offender, regardless of the nature of the crime for which the person is being supervised."

**EDMONDS, J.,** dissenting.

The majority holds that ORS 181.585 authorizes the Department of Corrections to adopt a sex offender risk assessment scale to be used by the Board of Parole and Post-Prison Supervision that permits the board to designate a person as a predatory sex offender solely on the basis of the nature of the person's past criminal acts. According to the majority, "proof that a person is currently dangerous is not a necessary prerequisite to determining that he or she continues to present the sort of risk that requires community notification." 188 Or App 617 at 627. Because the majority's interpretation deletes the necessity for proof that the statute on its face requires, I disagree with the majority's holding.

ORS 181.585 provides:

"(1) For purposes of ORS 181.585 to 181.587, a person is a predatory sex offender if the person exhibits characteristics showing a tendency to victimize or injure others and has been convicted of a sex crime listed in ORS 181.594(2)(a) to (d), has been convicted of attempting to commit one of those crimes or has been found guilty except for insanity of one of those crimes.

"(2) In determining whether a person is a predatory sex offender, an agency shall use a sex offender risk assessment scale approved by the Department of Corrections or a community corrections agency."

Subsection (1) of the statute is unambiguous and straightforward. Its text is composed of one sentence consisting of a prefatory phrase and two phrases that define when a person can be designated as a predatory sex offender. The phrases that provide the requirements of predatory sex offender status are in the conjunctive, separated by the word "and." The first requirement requires a *factual determination* about whether the person exhibits characteristics showing a tendency, if any, of the offender to victimize and injure others. The use by the legislature of the present tense word "exhibits" combined with the word "characteristics" is subject to no other reasonable interpretation than that the exhibition of characteristics showing a tendency to victimize or injure others must exist at the time that predatory sex offender status is sought.

The second requirement in ORS 181.585(1) identifies a category of crimes and requires that the board examine an offender's past record to determine whether the person has committed one of the listed crimes. When read with the prefatory clause, it says "a person is a predatory sex offender if the person * * * has been convicted of a sex crime listed in ORS 181.594(2)(a) to (d), has been convicted of attempting to commit one of those crimes or has been found guilty except for insanity of one of those crimes." The factual determination required by the second requirement is objective rather than subjective. The use of the words "has been convicted" and "has been found guilty" require only for the board to examine the record of the person's criminal history. Under the second requirement, unlike under the first requirement, no issues of fact are determined about what tendencies of the person are being exhibited at the time of the hearing.

Subsection (2) of the statute is similarly unambiguous. While subsection (1) provides for the requirements before predatory sex offender status can be imposed, subsection (2) authorizes the procedure for making the determinations in subsection (1). Under subsection (2), "the Board is directed to employ a Department-approved risk assessment scale" by subsection (2) of the statute. *Noble v. Board of Parole*, 327 Or 485, 497, 964 P2d 990 (1998).[1] It necessarily follows from the legislature's directive in subsection (2) that any risk assessment scale adopted by the department and used by the board must take into account both requirements of subsection (1), *i.e.*, the past criminal history of the person and tendencies that are present in the person at the time of the designation of the status.

---

[1] In *Noble*, the court held that due process requires notice and an evidentiary hearing when the board proposes to designate a person as a predatory sex offender. According to the *Noble* court, the determination of whether the person exhibits characteristics showing a tendency to victimize or injure others is a "factual determination." 327 Or at 497. The board, in making that determination undertakes an objective analysis of the offender's criminal history and a subjective analysis of "whether the offender exhibits predatory behavior[.]" *Id.* The issue in this case, whether the department is authorized to adopt a scale that permits the board to infer solely from a person's past convictions that the person exhibits characteristics showing a tendency to victimize or injure others, was not in issue in *Noble*. Nonetheless, the *Noble* court implicitly recognized in its opinion that ORS 181.585(1) imposes discrete requirements, the first of which is a subjective factual determination of whether the person exhibits the requisite characteristics. The second requirement requires only that the board objectively examine the person's past record.

Notwithstanding the language of subsection (1), the majority interprets subsection (2) to grant authority to allow the board to decide predatory sex offender status based only on an objective basis: the person's past conduct. According to the majority,

> "[t]he legislature's use of the present tense verb 'exhibits' implies that an offender must presently exhibit certain characteristics, but that verb does not identify which characteristics the offender must exhibit. Rather the participial phrase that follows and modifies 'characteristics'—*i.e,* 'characteristics showing a tendency to victimize others' performs that function. The participial phrase is broad. Nothing in the phrase 'showing a tendency to victimize others' requires proof that a person is currently dangerous. Rather, the phrase is broad enough to include persons whose past conduct provides reason to believe that they may be dangerous in the future. The board, for example, reasonably could conclude that an offender with a history of multiple convictions for sexual assault 'exhibits characteristics showing a tendency to victimize others.' "

188 Or App at 625. The majority ultimately concludes that the text of the statute is ambiguous and turns to the legislative history in support of its holding.[2]

The effect of the majority's reasoning is *to collapse* the factual determination required by subsection (1)'s first requirement into subsection (1)'s second requirement regarding the person's past conduct. Although the majority apparently concedes that the *statute* requires the board to make determinations regarding both the person's past record and present tendencies, the factual determination as to the person's existing tendencies is to be based, under the majority's view, on the person's past record. Under the board's rule, if an automatic override factor or three starred factors[3] are

---

[2] Because I believe that the text of ORS 181.585 is clear on its face, I would not resort to the legislative history in accordance with the rules of statutory interpretation. That position aside, there is nothing in the legislative history that particularly supports the majority's interpretation of the statute. As is evident from the history recited by the majority, the legislature did not focus on the issue before us. At best, the legislative history demonstrates that the legislature intended that the department adopt a risk assessment scale to govern the determination of predatory sex offender status. In light of the language of ORS 181.585(2), that understanding is not a remarkable revelation.

[3] Generally, automatic override factors or starred factors involve the nature of the prior convictions, their underlying circumstances and the presence or absence

deemed by the board to apply based on a preliminary determination, then the person is not afforded a hearing to determine if he or she "exhibits characteristics showing a tendency to victimize or injure others." Rather, in lieu of that determination, the board draws an inference from the person's past record. Thus, in *effect* under the rule, a person like petitioner is given only the opportunity to controvert the second statutory requirement, *i.e.*, the person's past record. The flaw in the board's rule is the failure to require the kind of factual determination regarding the person's existing tendencies (based on the characteristics that the person "exhibits" at the time of the classification) contemplated by the legislature.[4] Stated otherwise, in the language of ORS 174.010,[5] the majority fails in its reasoning to declare what is contained in the language of the statute by omitting from its interpretation of the statute the import of the words "exhibits characteristics."

Nonetheless, the majority asserts that "[n]othing in the text of ORS 181.585(1) precludes the department or the board, in carrying out that legislative mandate, from relying solely on an offender's previous convictions to determine his or her present risk of reoffending." 188 Or App at 625. However, a more careful examination of the text of subsection (1) belies that assertion. The present tense of the word "exhibits" when used with the word "characteristics" in subsection (1) unambiguously refers to the offender's "identifying qualities or traits" at the time of classification. *Webster's Third New*

---

of sexual criminal history at the time of the commission of the offense that is the subject of the prior conviction.

[4] The statute does not purport to limit the evidence that the board may consider regarding whether a person exhibits characteristics showing a tendency to victimize or injure others. It follows that under the statute, the board could properly make a finding that satisfies that requirement by drawing an inference from evidence of past conduct, even in contravention of other evidence suggesting that the person no longer is a danger to others. The vice of the rule in light of the statute's requirements is that it forecloses the opportunity for the board to consider competing evidence regarding the requirement under certain circumstances.

[5] ORS 174.010 provides:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible to be adopted to as will give effect to all."

*Int'l Dictionary*, 376 (unabridged ed 1993). Those words precede the phrase "showing a tendency to victimize or injure others," and they appear together before the word "and," a word that operates to set the second requirement apart from the first requirement. If the legislature had intended that the determination of the person's "tendencies" be based solely on the circumstances of the person's past record, it would *not* have used the words "exhibits characteristics" as the *designated means* under the rule by which tendencies to victimize or injure others are *manifested*, nor would it have inserted the participial phrase "showing a tendency to victimize or injure others" within the *first* requirement. Rather, the legislature would have used that phrase as part of the requirement of proof of the past commission of a listed sex crime and its underlying circumstances. Thus, for purposes of comparison, if the former had been the legislature's intention, the statute would provide that

> "a person is a predatory sex offender if the person has been convicted of a sex crime listed in ORS 181.594(2)(a) to (d), has been convicted of attempting to commit one of those crimes or has been found guilty except for insanity of one of those crimes and if the commission of those crimes showed a tendency to victimize or injure others."

The majority is correct about one point. It does not necessarily follow from the mere fact that the legislature inserted an "existing tendency" element into the statute that, in the abstract, the tendencies of a person can only be demonstrated by evidence about the person's characteristics at the time of the determination of the person's status as a predatory sex offender. But the possibility about what the legislature could have done does not create an ambiguity in this statute in light of its actual wording. In writing ORS 181.585, the legislature expressly told us how "existing tendencies" are to be determined for purposes of predatory sex offender status. The insertion of the words "exhibits characteristics" into the statute by the legislation in combination with the phrase "showing a tendency to victimize or injure others" within the first requirement of the statute demonstrates unambiguously an intent that the person's existing tendencies be determined by the consideration of the characteristics that the person exhibits. To hold as the majority does is to

hold that the legislature intended that an offender's tendencies be *predetermined* by his prior record or his past conduct. If that had been the legislature's intent, there would have been no need to use the words "exhibits characteristics" in the statute.

The above understanding of the legislature's intent is further confirmed if subsection (1) is read as a whole. What is immediately apparent is the contrast between the tense of the verb in the first requirement and the tenses of the verbs in the second requirement.[6] The contrast between present tense and past tense verbs separated by the conjunction "and" can only mean that the legislature intended the agency to focus on two different time periods when it enacted the statute. However, the majority's interpretation does not honor the legislature's dual temporal focus because it permits the board to exclude evidence of a person's existing characteristics at the time of classification from its determination.[7]

Nonetheless, according to the majority, the above analysis is "problematic for at least three reasons." 188 Or App at 626. First, the majority asserts that the fact that the second requirement of subsection (1) focuses on the past does not mean that the person's criminal history is "relevant only to that consideration." *Id.* Second, the majority says that "an offender's criminal history is logically and textually relevant to whether he or she 'exhibits characteristics showing a tendency to victimize or injure others.' " *Id.* Of course, the majority is correct; the statute could have been written in the way

---

[6] In *Martin v. City of Albany*, 320 Or 175, 181, 880 P2d 926 (1994), the Supreme Court explained,

"The use of a particular verb tense in a statute can be a significant indicator of the legislature's intention. * * * [citing to and explaining the holdings in *Gettman v. SAIF*, 289 Or 609, 614, 616 P2d 473 (1980), and *1000 Friends v. LCDC*, 292 Or 735, 746, 642 P2d 1158 (1982)].

"As those cases suggest, we do not lightly disregard the legislature's choice of verb tense, because we assume that the legislature's choice is purposeful. In most cases, we best effectuate the legislative intention by giving effect to the plain, natural and ordinary meaning of the verb tense chosen by the legislature."

[7] Moreover, as the *Noble* court observed, subsection (1)'s requirement that a person exhibit characteristics showing the required tendency requires a subjective determination while the determination regarding the person's past record is objective in nature. *Noble,* 327 Or at 498. Notably, the majority's interpretation dispenses with any subjective determination.

that the majority interprets it. However, ORS 174.040 forbids courts from inserting words into or deleting words from a statute. Our task is to ascertain and declare what is in the statute and not to substitute our judgment for that of the legislature. At the risk of redundancy, the legislature has expressly said in ORS 181.585(1) that the tendency to victimize or injure others must be found from the manifestation of the "characteristics" that the person "exhibits." Inferences drawn by the board from past criminal history are conceptually different from "characteristics" that a person "exhibits."

Third, the majority asserts that

"the dissents unnecessarily discount the delegation of legislative authority to the department in ORS 181.585(2) to identify, in the first instance, those characteristics or combinations of characteristics that will define when a person shows a tendency to victimize or injure others."

188 Or App at 626. According to the majority, that "delegation is broad enough to permit the department to develop a risk assessment scale that relies, as the department's scale does, on an offender's criminal history to make a present prediction about the offender's future risk." *Id.* However, subsection (2) does not give the agency *carte blanche* authority. Any risk assessment scale adopted by agency pursuant to the authority granted to it by subsection (2) must necessarily incorporate the statutory requirements for predatory sex offender status provided for in subsection (1). Any attempt by the agency to exercise its delegated authority in a manner inconsistent with those requirements is an invalid exercise of authority. Subsection (1) of the statute requires the board to make two determinations: the first regarding the person's existing tendencies at the time of classification based on the characteristics that the person exhibits; and the second based on whether the person's past record contains one or more of the listed sex crimes. The rule applied in this case fails in that regard for the reasons explained above. Because the text of the statute cannot be interpreted consistently with the rules of statutory construction in the way that the majority proposes, it follows that the board's determination under the rule based solely on petitioner's past record exceeds the authority granted to the board by ORS 181.585(1).

For that reason, I respectfully dissent.

Armstrong, Wollheim, and Brewer, JJ., join in this dissent.

**ARMSTRONG, J.,** dissenting.

I agree completely with the points that Judge Edmonds makes in his dissent. I write separately to expand on one of them and to add another that confirms that the policy that the Board of Parole and Post-Prison Supervision has adopted concerning the use of the Department of Corrections' sex offender risk assessment scale violates ORS 181.585.

ORS 181.585 provides:

"(1)   For purposes of ORS 181.585 to 181.587, a person is a predatory sex offender if the person exhibits characteristics showing a tendency to victimize or injure others and has been convicted of a sex crime listed in ORS 181.594(2)(a) to (d), has been convicted of attempting to commit one of those crimes or has been found guilty except for insanity of one of those crimes.

"(2)   In determining whether a person is a predatory sex offender, an agency shall use a sex offender risk assessment scale approved by the Department of Corrections, or a community corrections agency."

The department has adopted a risk assessment scale that the board uses in deciding whether to designate someone as a predatory sex offender. The scale is made up of a list of positive and negative factors, based on criminal history and current characteristics. The factors have different point values, and those that are relevant to the particular offender are marked and totaled to give a risk assessment score. When the person is assigned one of three specific "override" factors on the scale,[1] or the person is assigned three or more "starred" items on the scale, the board has determined that it *will* designate the person as a predatory sex offender. When the person is not assigned an override factor or three starred factors, but the person's score is minus 50 or below, the board *may*

---

[1] The current override factors are forcible rape, use of a weapon during the commission of the offense, and men who molest boys.

designate the person as a predatory sex offender if it determines that the designation is necessary to protect the public or to adequately supervise the person in the community.[2]

The flaw in the board's approach is its decision to rely exclusively on the department's risk assessment scale in deciding whether to designate as a predatory sex offender a person who has an override factor or three or more starred factors on the scale. Its decision to do that means that it will designate a person as a predatory sex offender without making an individualized determination that the conduct that gave rise to the override or starred factors is conduct that establishes, at the time of the designation, that the "person exhibits characteristics showing a tendency to victimize or injure others." In other words, the board's approach means that it will make the designation based on past conduct without regard to the amount of time that has elapsed since the person engaged in the conduct and without regard to the actions taken by the person to address the conduct.

The effect of the board's approach is to focus on subsection (2) of ORS 181.585 to the exclusion of subsection (1) of the statute. Subsection (2) requires the board to use a sex offender risk assessment scale, such as the one created by the department, in designating people as predatory sex offenders. However, the way that the board *uses* the scale must be consistent with the task that subsection (1) requires the board to perform.

The task assigned to the board by subsection (1) is to determine whether a person *"exhibits,"* that is, *now has* "characteristics showing a tendency to victimize or injure others." If subsection (1) were written in the past tense, so that the determination that the board had to make was whether a person *"has exhibited* characteristics showing a tendency to victimize or injure others,"* then it would be

---

. [2] At the time relevant to petitioner's designation, the board had not yet adopted permanent administrative rules implementing its practice. Rather, it established a permanent policy that it applied to all offenders for whom it issued a supervision order on or after January 1, 1999. The board first adopted its administrative rule implementing the policy, OAR 255-060-0011, on February 15, 2000. Petitioner's designation is governed by the board's policy rather than its rule, but there is no substantive difference between the two standards as they related to the issues in this case.

proper for the board to use the override and starred factors to determine conclusively that a person is a predatory sex offender, because those factors would unquestionably establish that the person has exhibited the requisite characteristics. However, because subsection (1) is written in the present tense, the board must determine what a person's *present* characteristics show regarding the person's tendency to victimize or injure others, not the person's past characteristics. The board's approach to the override and starred factors equates a person's past conduct with the person's present condition, but they are not the same. The board therefore violates subsection (1) by designating people such as petitioner as predatory sex offenders solely on the ground that they have an override or three starred factors on the department's sex offender risk assessment scale.

I believe that the board's approach to the override and starred factors also conflicts with the Supreme Court's application of ORS 181.585 in *Noble v. Board of Parole*, 327 Or 485, 964 P2d 990 (1998). The court held in *Noble* that the Due Process Clause required the board to give notice and a hearing to anyone whom it sought to designate under ORS 181.585 as a predatory sex offender.[3] *Id.* at 498. It based its holding on its conclusion that "the ultimate question [under the statute], whether petitioner 'exhibits characteristics showing a tendency to injure others,' inherently is subjective." *Id.* at 497-98. The court could not resolve what the Due Process Clause required without first resolving what factual issues the statute required the board to decide. Consequently, the court's conclusion that the statute requires the board to make *an inherently subjective determination* about whether a petitioner exhibits the requisite characteristics is necessarily based on an interpretation of the statute. That interpretation is directly contrary to the interpretation that the board has given the statute.

Under the board's approach to the override and starred factors in the risk assessment scale, the presence of an override or three starred factors conclusively establishes

---

[3] The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

that a person will be designated as a predatory sex offender. Those factors are purely objective factors that address past conduct. They are applied by the board without making any subjective evaluation about whether the past conduct that gave rise to those factors is conduct that indicates that the person *now has* characteristics showing a tendency to injure others.

In summary, the board's use of the override and starred factors conflicts with the language of ORS 181.585 and with the Supreme Court's application of that language in *Noble*. Under a correct interpretation of the statute, the board erred by relying conclusively on the presence of three starred factors on the risk assessment scale to designate petitioner as a predatory sex offender under ORS 181.585. The majority errs in concluding otherwise.